Carol URASHKA

v.

The GRIFFIN HOSPITAL
and Royce York.

Civ. No. 3:93–1025 (JAC).

United States District Court,
D. Connecticut.

Jan. 24, 1994.

Floyd J. Dugas, Berchem, Moses & Devlin, Milford, CT, for plaintiff.

Emanuel N. Psarakis, Duncan Ross Mac-Kay, Robinson & Cole, Hartford, CT, for defendants.

### AMENDED RULING ON DEFENDANTS' MOTION TO DISMISS

#### JOSÉ A. CABRANES, Chief Judge:

This action arises under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621 *et seq.* Pending before the court is the defendants' Motion to Dismiss with Costs and Attorney's Fees, and, Alternatively, Motion to Make More Definite and to Strike (filed July 8, 1993).

### BACKGROUND

The plaintiff, Carol Urashka, filed a nine-count complaint on May 18, 1993, against the Griffin Hospital in Derby, Connecticut and Royce York, the Assistant Director of the Respiratory/Pulmonary Department. The plaintiff, formerly employed in that department as a medical secretary, alleges in Count I that her termination on December 10, 1991 violated the ADEA. The plaintiff further alleges that the hospital's subsequent refusal to hire her in January 1992 is also in violation of the ADEA.

In Count II, the plaintiff alleges that the defendants violated her rights under First Amendment to the United States Constitution, as well as Sections 3, 4, and 14 of Article First of the Connecticut Constitution[1] and Conn.Gen.Stat. § 31–51q.[2]

The plaintiff alleges in Counts III through IX various state law claims, including breach of implied contract, tortious interference with contractual relations, detrimental reliance, breach of an express and implied covenant of good faith and fair dealing, violation of the Connecticut anti-blacklisting statute (Conn. Gen.Stat. § 31–51), defamation, and, finally, intentional infliction of emotional distress.

### DISCUSSION

#### I.

On July 8, 1993, the defendants moved to dismiss the complaint, with costs and attorney's fees. Alternatively, they have moved to make more definite the allegations contained in paragraphs 12, 14, and 20 of the complaint and to strike the allegations contained in paragraphs 17, 18, and 19.

With regard to Count I, the defendants maintain that this court lacks subject matter jurisdiction due to the plaintiff's failure to exhaust her administrative remedies. According to the defendants, the ADEA expressly requires as a prerequisite to the institution of a civil action under its provisions, that a plaintiff fully exhaust her administrative remedies. The defendants contend that in this case the plaintiff did not even pursue, much less exhaust, her administrative remedies.

1. Section 3 of Article First provides that "[t]he exercise and enjoyment of religious profession and worship, without discrimination, shall forever be free to all persons of the state...." Section 14, in turn, states that "[t]he citizens have a right, in a peaceable manner, to assemble for their common good, and to apply to those invested with the powers of government, for redress of grievances, or other purposes, by petition, address or remonstrance." It is unclear, however, why either of these provision applies here, and the plaintiff has nowhere explained how the defendants' alleged wrongful conduct has interfered with her religious rights or her rights to assemble peaceably and to petition the state government.

Section 4, the only provision of the Connecticut Constitution even arguably applicable here, provides that "[e]very citizen may freely speak, write and publish his sentiments on all subjects...."

2. Conn.Gen.Stat. § 31–51q states that

Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4, or 14 of article first of the constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer.

The defendants further maintain that any attempt on the part of the plaintiff to exhaust her administrative remedies at this juncture would be futile inasmuch as the plaintiff has utterly failed to comply with the timeliness requirements of the ADEA. The defendants therefore maintain that the plaintiff's ADEA claim should be dismissed with prejudice as untimely.

With regard to Count II, the defendants argue that the allegations should be dismissed, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. According to the defendants, the plaintiff's constitutional claims—both state and federal—cannot succeed inasmuch as neither defendant is a governmental actor.

Furthermore, the defendants assert that Conn.Gen.Stat. § 31–51q protects only those employees who have engaged in speech on issues of "public concern" and does not extend to wholly private or internal speech relating to a declarant's own terms and conditions of employment. Moreover, the defendants urge this court to impose costs and reasonable attorney's fees pursuant to Conn. Gen.Stat. § 31–51q, arguing that this claim lacks substantial justification.

With regard to the plaintiff's remaining counts, which assert only state law claims, the defendants maintain that—since all of the federal claims asserted by the plaintiff should be dismissed—these pendent, or supplemental, state law claims should also be dismissed, pursuant to 28 U.S.C. § 1367(c)(3),[3] for lack of subject matter jurisdiction. Alternatively, the defendants argue that these state law claims should dismissed, pursuant to Fed. R.Civ.P. 12(b)(6), for failure to state a claim for which relief can be granted.

Finally, the defendants have moved for a more definite statement, pursuant to Fed. R.Civ.P. 12(e), arguing that paragraphs 12, 14, and 20 of the complaint are far too broad and not in compliance with Fed.R.Civ.P. 10(b). The defendants have also moved, pursuant to Fed.R.Civ.P. 12(f), to strike paragraphs 17, 18, and 19 as immaterial, impertinent, and scandalous.

The plaintiff argues in response that there is ample uncertainty under the ADEA regarding the issue of exhaustion of administrative remedies and that numerous federal courts have allowed plaintiffs to proceed under the ADEA without requiring that they first resort to an administrative forum. The plaintiff objects to the defendant's rigid construction of the ADEA, and notes that she sent letters to the Connecticut Commission on Human Rights and Opportunities ("CCHRO") on June 8, 1993 and June 22, 1993 thoroughly outlining the facts of her case. According to the plaintiff, despite ample opportunity to prosecute her claim, the CCHRO chose not to pursue the matter. The plaintiff further contends that the hospital's repeated refusal to hire her constitutes a continuing violation of the ADEA, and that, as a result, her ADEA claim is not untimely.

As for Count II, the plaintiff argues that Conn.Gen.Stat. 31–51q applies to cases of private employment. With regard to the remaining state law claims, the plaintiff maintains that if either Count I or Count II survives, these pendent, or supplemental, state law claims must also survive.

Finally, the plaintiff contends that her allegations contained in paragraphs 12, 14, and 20 of the complaint are sufficiently pled and are neither vague nor ambiguous. She further contends that the allegations contained in paragraphs 17, 18, and 19 are relevant to this action in that they demonstrate the defendants' discriminatory attitude and efforts to humiliate her.

After full briefing, the court heard oral argument on November 1, 1993, at which the court reserved decision. The court allowed the parties to submit supplemental memoranda, and the defendants' motion is now ripe for decision.

---

**3.** 28 U.S.C. § 1367(c) provided that "[t]he district courts may decline to exercise supplemental jurisdiction ... if—

   .    .    .    .    .

  (3) the district court has dismissed all claims over which it has original jurisdiction...."

## II.

When considering a motion to dismiss the court accepts all factual allegations in the complaint as true and draws inferences from those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991). Dismissal is not warranted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Weiss v. Wittcoff,* 966 F.2d 109, 112 (2d Cir. 1992). "The issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir.1978), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). The question for this court to decide is "whether or not it appears to a certainty under existing laws that no relief can be granted under any set of facts that might be proved in support of plaintiffs' claims." *Id.*

## III.

### A.

The defendants first maintain that the plaintiff's ADEA claim is untimely. According to the defendants, the plaintiff failed to file *any* administrative claim, either with the federal Equal Employment Opportunity Commission ("EEOC") or its Connecticut state counterpart, the CCHRO, within 300 days of the alleged unlawful practice.[4] Although the plaintiff alleges that the defendants wrongfully terminated her employment on December 10, 1991, *see* Complaint at ¶ 8, and that they unlawfully refused to hire her in January 1992, *see id.* at ¶ 22, she apparently first notified the CCHRO, by letter, only on June 8, 1993. *See* Plaintiff's Memoran-

dum in Opposition (filed Aug. 19, 1993) ("Plaintiff's Memorandum"), at 9. Even assuming that the June 9, 1993 letter constituted an administrative filing, it would appear that the plaintiff's administrative claim was untimely. As a result, her current ADEA claim would also be untimely. *See* 29 U.S.C. § 626(d); *Reichman v. Bonsignore, Brignati & Mazzotta P.C.,* 818 F.2d 278, 282–83 (2d Cir.1987).

At oral argument, however, the plaintiff raised an entirely new claim—namely, that the defendants' refusal to hire the plaintiff on several occasions *within* the limitations period constituted a "continuing violation" of the ADEA. According to the plaintiff, this continuing violation renders timely the plaintiff's ADEA claim. On the basis of this record, however, the plaintiff's argument is unavailing.

"To establish a continuing violation [a plaintiff] would have to show 'a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period.'" *Bruno v. Western Elec. Co.,* 829 F.2d 957, 961 (10th Cir.1987) (*quoting Valentino v. United States Postal Serv.,* 674 F.2d 56, 65 (D.C.Cir.1982)).

Under the circumstances presented here, the court finds that the plaintiff has not sufficiently pled a continuing violation under the ADEA. Simply put, the plaintiff has not specifically alleged any violation within the limitations period. While the plaintiff asserts in her Supplemental Memorandum (filed Nov. 5, 1993) ("Plaintiff's Supplemental Memorandum"), at 9, that the defendants refused to hire her for "numerous ... positions which were available well within the 300 day filing period," the Complaint explicitly refers only to the defendants' alleged refusal to hire the plaintiff in January 1992. *See* Complaint at ¶ 22. Even in light of the liberal construction of pleadings encouraged

---

4. 29 U.S.C. § 626(d) provides, in relevant part, that

[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be

filed ... within 300 days after the alleged unlawful practice....

Similarly, Conn.Gen.Stat. § 46a–82(e) provides that a plaintiff must file a complaint with the CCHRO within 180 days of the occurrence of the alleged discriminatory act.

by the Federal Rules of Civil Procedure, vague and sweeping assertions in legal memoranda are not tantamount to specific allegations in a Complaint. Accordingly, the court finds that the plaintiff's allegations are insufficient to state a continuing violation under the ADEA. Count I must therefore be dismissed. However, it is dismissed without prejudice to the filing of an amended complaint which alleges with the requisite clarity and specificity a continuing violation under the ADEA.[5]

■ The defendants argue that Count I should be dismissed *with* prejudice in that—even apart from the timeliness issue—the termination and alleged refusal to hire are separate and discrete occurrences that do not come within the continuing violation theory based upon a pattern or practice of behavior. Unfortunately for the defendants, such a claim would simply not be susceptible to disposition prior to any discovery on the matter. Whether in fact the plaintiff's termination and the defendants' subsequent refusal to hire her would be sufficiently linked, in the absence of any timeliness concerns, to sustain a continuing violation claim is not a matter that should be decided on the pleadings. Accordingly, while the court dismisses Count I, it does so without prejudice.

### B.

#### (1)

■ As for Count II, the plaintiff's constitutional claims must clearly fail. Absent state action, the plaintiff simply cannot pursue a claim under the First Amendment to the United States Constitution. *See, e.g., Lloyd Corp. v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972) (a privately-owned retail shopping center is not subject to the First Amendment, which safeguards the right of free speech by limitations on *state* action); *Musso v. Hourigan,* 836 F.2d 736, 742 (2d Cir.1988) (the First Amendment prohibits *state action* that regulates speech on the basis of content); *Johnson v. Carpenter Technology Corporation,* 723 F.Supp. 180, 185–86 (D.Conn.1989) (*citing Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)) (acts of private individuals are beyond the scope of state action and are thus beyond the protections of the federal constitution unless the state has exercised coercive power, making the act that of the state); *cf. International Society for Krishna Consciousness v. Lee,* —— U.S. ——, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992) (an airport terminal—even though it is owned and operated by a *public* authority—is not a "public forum" for First Amendment purposes and ban on solicitation need only satisfy a reasonableness standard).

■ Nor can the plaintiff assert a claim under Article First of the Connecticut Constitution without a showing of state action. *See Cologne v. Westfarms Associates,* 192 Conn. 48, 66, 469 A.2d 1201 (1984) (following *Lloyd v. Tanner* and rejecting claim that sections 4 and 14 of Article First of the Connecticut Constitution apply to privately owned shopping mall).

While the plaintiff asserted at oral argument that the governmental funding, licensing, and regulation of the standards of care and operations of the hospital conferred upon the hospital the status of a governmental entity, the plaintiff has wisely retracted this meritless claim. *See* Plaintiff's Supplemental Memorandum at 3. *See, e.g., Schlein v. Milford Hospital,* 561 F.2d 427 (2d Cir.1977) (per curiam) (hospital's denial of staff privileges to doctor did not amount to state action, since, while the hospital was state-licensed, regulated by the state health department, tax exempt and empowered by the state to annex contiguous land for expansion, the state was not shown to have played any part in the formulation or implementation of procedures utilized in deciding applications for staff privileges, and the state played no role in making the decision itself).

Inasmuch as the plaintiff has failed to allege a "sufficiently close nexus between the state and the challenged action ... so that the action ... may be fairly treated as that of the State itself," *see Jackson v. Metropoli-*

---

5. Of course, all allegations in any such amended complaint shall be "well grounded in fact" and made only after "a reasonable and competent inquiry." *See* Fed.R.Civ.P. 11; *Bolden v. Morgan Stanley & Co., Inc.,* 765 F.Supp. 830, 834 (S.D.N.Y.1991).

*tan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974), the plaintiff's state and federal constitutional claims must be dismissed with prejudice.[6]

### (2)

The plaintiff's claim under Conn.Gen. Stat. § 31–51q is similarly without merit. The plaintiff vehemently insists that Section 31–51q does apply to the context of private employment. *See* Plaintiff's Memorandum at 10. Nowhere, however, have the defendants or this court disagreed with this proposition. *See* Defendants' Reply Memorandum (filed Sept. 1, 1993), at 7; Defendants' Supplemental Memorandum (filed Nov. 8, 1993), at 3. *See Donahue v. Unisys Corp.,* Civil Action No. H–89–670, 1991 WL 537530 (JAC) (D.Conn. Feb. 15, 1991), slip op. at 5 (for the purposes of Section 31–51q, analysis used to determine whether public employee's First Amendment rights were violated would be equally appropriate in the context of private employment); *Andersen v. E & J Gallo Winery,* Civil Action No. H–85–295, 1985 WL 134 (JAC) (D.Conn. Nov. 7, 1985), slip op. at 12 (in determining whether private employee's speech is protected by Section 31–51q, court turns for guidance to cases involving claims brought by public employees under the First Amendment).

The question, properly presented, is whether the *content* of the plaintiff's speech is protected by Section 31–51q. The defendants maintain that this provision protects only speech on issues of "public concern," and not wholly private or internal speech relating to one's own terms and conditions of employment. Therefore, according to the defendants, Section 31–51q has no application here. The court agrees.

Section 31–51q, by its own terms, protects only those rights "guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the [Connecticut] constitution...." Even apart from the state action requirement, the First Amendment does not protect speech on purely private matters, such as the terms and conditions of one's employment. *See Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983) ("when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum" in which to review personnel decisions and employee grievances). Section 31–51q, therefore, will afford protection to the plaintiff only if the speech for which she was allegedly terminated involved a "matter of public concern."

Here, the complaint, as well as the plaintiff's memoranda, give no indication of any speech involving a matter of public concern—to the contrary, it is clear that the plaintiff's speech involved precisely the type of personal employee grievance identified by the Supreme Court in *Connick.*[7] There are no allegations that the plaintiff spoke out anywhere but at work during working hours, *see, e.g., Monahan v. Bausch,* 1991 WL 182825, 1991 Conn.Super. LEXIS 2057 (Conn.Sup. Ct., Jud. Dist. of Fairfield, Sept. 11, 1991); and there are no allegations that the plaintiff's speech extended beyond the scope of the terms and conditions of her employment, *see, e.g., Silva v. Caldor, Inc.,* 1992 WL 464634, 1993 Conn.Super. LEXIS 697 (Conn. Sup.Ct., Jud. Dist. of Hartford/New Britain, Mar. 9, 1993).

The plaintiff relies on several cases[8] to support her claim that Section 31–51q pro-

---

**6.** Inasmuch as the plaintiff's federal claims have all been dismissed, the court also dismisses the plaintiff's remaining claims—all of which are grounded exclusively in state law—pursuant to 28 U.S.C. § 1367(c)(3). *See* note 3, *supra.* However, because the plaintiff's ADEA claim is dismissed *without* prejudice, it is possible that this litigation will continue after the issuance of this Ruling. As a result, the court will address each of the plaintiff's state law claims on the merits in order to avoid any duplicative efforts on the part

of the court or counsel in the event that this case does in fact proceed.

**7.** The Complaint, at ¶ 28, alleges that, "[d]uring the course of Plaintiff's employment, she voiced concerns regarding the Hospital Administration's mismanagement and as to how she had been overworked and subject to inordinate amounts of stress."

**8.** The plaintiff relies on four cases to support her claim that Section 31–51q applies here: *Mirto v.*

tects the speech at issue here. Unfortunately for the plaintiff, these cases are all inapposite.

In *Mirto,* the plaintiff criticized his employer, who provided transportation services for Hamden school children pursuant to a contract with the Hamden Board of Education. The court found that the plaintiff's speech—which sought to improve transportation services for Hamden school children, deter the fraudulent diversion of public funds, and alert the Hamden Board of Education of the defendant's false billings and other improprieties—fell within the scope of Section 31–51q.

In *Robinson,* the plaintiff claimed that he was terminated for having threatened to provide the news media with information regarding the allegedly racist policies and practices of his employer. Similarly, in *MacLean,* the plaintiff was employed as a registered nurse at a long-term care facility for aged nuns. She alleged that she was terminated because she discovered violations of a number of federal and state laws and regulations regarding the procurement, control, and dispensing of controlled substances and prescription drugs and because she advised the drug control division of the State of Connecticut Department of Consumer Protection about the conditions at the facility, despite the instructions of her superiors to remain silent on the issue.

Finally, in *D'Alton v. Canterbury School,* the defendant apparently never argued that the plaintiff's speech did not involve matters of public concern, grounding its motion to strike under state law solely on the plaintiff's failure to allege that the protected speech did "not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer...." Conn.Gen. Stat. § 31–51q. In so doing, the defendant implicitly conceded that the plaintiff's speech would have been otherwise protected by Section 31–51q.

Here, to the contrary, the defendant has explicitly raised the issue of whether the content of the plaintiff's speech is protected by Section 31–51q, and the plaintiff's allegations in this regard—which relate solely to the private matter of the terms and conditions of her employment—fail to suggest any broader issue of public concern which would trigger the protection afforded by Section 31–51q. Accordingly, the plaintiff's claim under that provision—if the court were to exercise supplemental jurisdiction—would be dismissed with prejudice.[9]

## C.

Count IV, which asserts a claim based on tortious interference with contract, would also be dismissed with prejudice. In Connecticut, a party to a contract cannot be held liable for tortious interference with that contract. *See, e.g., Powell v. Feroleto Steel Co.,* 659 F.Supp. 303, 307 (D.Conn.1986) (as a matter of law, party to a contract cannot interfere with that contract) *(citing Murray v. Bridgeport Hospital,* 40 Conn.Sup. 56, 59–60, 480 A.2d 610 (Conn.Super.1984)). Therefore, as an "agent of the Hospital," *see* Complaint at ¶ 39, defendant York cannot be held liable for interfering with a contract between the plaintiff and the Hospital. The plaintiff has not brought to the court's attention—and the court is not aware of—any authority that states otherwise. Accordingly, if the court

*Laidlaw Transit, Inc.,* 1993 WL 137627, 1993 Conn.Super. LEXIS 963 (Conn.Super., Jud. Dist. of New Haven, Apr. 21, 1993); *Robinson v. Southern New England Telephone Co.,* 1992 WL 123955, 1992 Conn.Super. LEXIS 1633 (Conn.Super., Jud. Dist. of Middlesex, May 26, 1992); *MacLean v. School Sisters of Notre Dame,* 1992 WL 77128, 1992 Conn.Super. LEXIS 923 (Conn.Super., Jud. Dist. of Fairfield, Mar. 31, 1992); *D'Alton v. Canterbury School,* 1991 WL 127098, 1991 Conn.Super. LEXIS 1576 (Conn.Super., Jud. Dist. of Litchfield, July 3, 1991).

9. The defendants have also requested costs and attorney's fees pursuant to Section 31–51q. That provision provides, in relevant part, that "[i]f the court determines that [an] action for damages [under this section] was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer." *See* note 2, *supra.* If the court were to reach this supplemental state law claim, however, it would, in the exercise of its discretion, decline to award costs and attorney's fees to the defendants pursuant to Section 31–51q.

were to exercise supplemental jurisdiction, Count IV would be dismissed with prejudice.

The defendants argue that the other state law claims [10] should also be dismissed with prejudice. According to the defendants, the plaintiff cannot pursue any claim grounded in the legal conclusion that her employment was wrongfully terminated since she admitted that she actually "quit." *See* Complaint at ¶ 20.

However, if it were to exercise supplemental jurisdiction, the court would decline the defendants' invitation to dismiss these claims on the merits at such an early stage of the litigation. Whether in fact one or more of the plaintiff's state law claims, as well as her ADEA claim, would be precluded by her own words and conduct is not a matter which should be resolved on a motion to dismiss. In the event that the plaintiff succeeds in sufficiently alleging a continuing violation claim under the ADEA, the court would have to treat the allegations in the Complaint as true. Even if some allegations appeared inconsistent with others, the court would not dismiss the plaintiff's state law claims—or the plaintiff's ADEA claim—on the asserted ground that the plaintiff voluntarily resigned.

### D.

Because the court has determined that the plaintiff's Complaint should be dismissed, the defendants' alternative motions for a more definite statement and to strike are technically moot. However, in order to avoid duplication and delay in the event that this litigation continues, *see* note 6, *supra*, the court will address these alternative motions on their merits.

#### (1)

With regard to the defendants' motion for a more definite statement, the court finds that the complaint adequately notifies the defendants of the nature of the plaintiff's claims and therefore satisfies the liberal pleading requirements of Fed.R.Civ.P. 8. *See* 2A Moore's Federal Practice ¶ 12.18[1] (1992 & Supp.1993). Accordingly, if the court were to address the defendants' motion for a more definite statement on the basis of a complaint that seeks to cure the defects identified in Count I, that motion would be denied.

#### (2)

The defendants' alternative motion to strike paragraph 17 [11] of the complaint would, in such circumstances, also be denied. Fed.R.Civ.P. 12(f) provides, in pertinent part, that "the court may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter." Nevertheless, motions to strike are not favored by the Federal Rules. *See* 5A Charles A. Wright, Arthur H. Miller & Edward H. Cooper, Federal Practice and Procedure § 1380 (1988 & Supp.1993). Here, the court is not convinced that the allegations of paragraph 17 could have no possible bearing on the subject matter of the litigation. As a result, the defendants' motion would fail. *See Schramm v. Krischell,* 84 F.R.D. 294, 299 (D.Conn.1979). Put simply, this allegation, if proven, might conceivably support a claim of age discrimination.

Paragraphs 18 and 19,[12] however, are entirely a different matter. Although motions to strike are generally disfavored, even the plaintiff concedes that the court possesses considerable discretion in deter-

---

**10.** These claims are set forth in Counts III, V, VI, VII, VIII, and IX.

**11.** Paragraph 17 of the Complaint states:
Shortly before her termination, Plaintiff had undergone a complete hysterectomy. In reference to various side effects the Plaintiff was experiencing. [Defendant] York commented to the Plaintiff that "women with your problem have been known to steal things." On various other occasions, York made comments in the Plaintiff's presence with respect to the sexuality of younger women, including York's wife.

**12.** Paragraph 18 reads:

On a separate occasion Plaintiff walked in to [sic] [Defendant] York's office where York was speaking with a respiratory therapist, and heard Royce state to the therapist (another male), "Ken ... really likes Carol a lot," to which the therapist responded with a derogatory sexual reference concerning [Ken's] penis.
Paragraph 19 reads:
On other occasions York had made comments in front of Plaintiff concerning a female volunteer who worked with Plaintiff having a "little tush."

mining whether a motion to strike should be granted. *See* Plaintiff's Memorandum at 18 (*citing Hoffman Motors Corp. v. Alfa Romeo, S.P.A.*, 244 F.Supp. 70, 81 (S.D.N.Y. 1965)). Here, the court is at a loss to discern any connection whatsoever between these portions of the complaint and a claim based on age discrimination. Moreover, the presence of this material would clearly prejudice the defendants. Accordingly, if the court were to reach the merits of the defendants' motion to strike paragraphs 18 and 19, that motion would be granted, and these paragraphs would be ordered stricken from the Complaint.

To summarize:

(1) Count I is dismissed without prejudice.

(2) The plaintiff's federal constitutional claim in Count II is dismissed with prejudice.

(3) As a result, all remaining claims—which are based exclusively on state law—are also dismissed, pursuant to 28 U.S.C. § 1367(c)(3).

(4) If the court were to reach the state law claims:

(a) The plaintiff's state constitutional claims, as well as her claim under Conn.Gen. Stat. § 31–51q, would be dismissed with prejudice. The court, however, would decline to award costs and attorney's fees to the defendants.

(b) The plaintiff's claim of tortious interference of contract set forth in Count IV would be dismissed with prejudice.

(c) The plaintiff's remaining state law claims—set forth in Counts III, V, VI, VII, VIII, and IX—would not be dismissed on the merits.

(5) The defendants' alternative motions for a more definite statement and to strike are denied as moot. If the court were to reach these motions:

(a) The defendant's motion for a more definite statement would be denied.

(b) The defendant's motion to strike paragraph 17 of the Complaint would also be denied.

(c) Finally, the defendant's motion to strike paragraphs 18 and 19 would be granted.

In the event that this litigation proceeds, the parties are advised to take heed of the court's position on all the issues discussed in this Ruling.

## CONCLUSION

Based on the record, and for the reasons stated above, the defendants' Motion to Dismiss with Costs and Attorney's Fees, and, Alternatively, Motion to Make More Definite and to Strike (filed July 8, 1993) (doc. # 6) is hereby GRANTED in part and DENIED in part in accordance with this Ruling.

Inasmuch as the plaintiff has apparently failed to file a motion for leave to amend her complaint, this action is hereby DISMISSED, with prejudice and without costs to any party, in accordance with the last paragraph of the court's initial Ruling of December 2, 1993 (doc. # 15). Accordingly, the Clerk shall CLOSE this case.

It is so ordered.