104 F.3d 355
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
David E. JOHNSON and Susan E. Johnson, Plaintiffs-Appellants,
v.
CHESEBROUGH-PONDS, INC. Defendant-Appellee.
 No. 96-7474.
 United States Court of Appeals, Second Circuit.
 Dec. 23, 1996.
 
 1
 Appeal from the United States District Court for the District of Connecticut (Gerard L. Goettel, Judge).
 
 
 2
 APPEARING FOR APPELLANTS: Susan King Shaw, Farren and King, New Haven, CT.
 
 
 3
 APPEARING FOR APPELLEE: Paul E. Knag, Cummings & Lockwood, Stamford, CT.
 
 
 4
 D.Conn.
 
 
 5
 AFFIRMED.
 
 
 6
 Before CARDAMONE and PARKER, Circuit Judges and WEXLER,* District Judge.
 
 
 7
 This cause came to be heard on the transcript of record from the United States District Court for the District of Connecticut and was argued by counsel for the appellants and appellee.
 
 
 8
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the district court's judgment is affirmed.
 
 
 9
 In August 1990, Johnson took a job with Chesebrough. As Johnson and his family lived in Pennsylvania, and the job was in Connecticut, Chesebrough bought his Pennsylvania house, paid his moving expenses, and paid the closing costs on his Connecticut home. However, a few months after Johnson started work, his supervisor, Duncan, became dissatisfied with Johnson's performance. They met on March 13, 1991 to discuss the matter. At this meeting, Duncan told Johnson that he had three months to improve "or else." On March 27, 1991, Duncan and Johnson met again to discuss Johnson's performance. The exact nature of this discussion is disputed, but it is common ground that one topic was "workaholics." The next day, Johnson put an article on Duncan's desk on the topic of the difficulties of working for a workaholic. Duncan, deciding that this response to his criticism revealed that the two could no longer work together, fired Johnson the next working day, April 2, 1991. Johnson claims that he was escorted out of the building "like a criminal." He was given a severance package of two months pay, 17 days of vacation pay, and three months of outplacement service.
 
 
 10
 Johnson filed suit in the Superior Court of the State of Connecticut for the Judicial District of New Haven. Mrs. Johnson added a claim for loss of consortium. Chesebrough removed to the District of Connecticut based on diversity of citizenship, claiming it was a citizen of New York. The district court dismissed Johnson's claim on summary judgment.
 
 
 11
 Counts One and Two of Johnson's suit alleged that Chesebrough made fraudulent misrepresentations, and that he relied on these misrepresentations to his detriment. Connecticut law provides actions for fraudulent misrepresentation, Billington v. Billington, 220 Conn. 212, 217 (1991), and negligent misrepresentation, D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206 (1987). Johnson does not spell out exactly how Chesebrough's alleged misrepresentations harmed him. He appears to advance a theory that Chesebrough's reasons for firing him were pretextual. That is, Chesebrough falsely represented that it would not be undergoing further lay-offs; these misrepresentations induced Johnson to take the job; Johnson was in fact laid off, notwithstanding Chesebrough's characterization of the lay-off as a dismissal for poor performance.
 
 
 12
 Only one of Chesebrough's alleged misrepresentations has any relevance to the question of ongoing layoffs: that a Chesebrough facility in Pomona, California, was closed shortly after Johnson was hired, and that a corporate press release sent out at the time stated that the closing was part of a "continuing integration of the Faberge business [a recent corporate acquisition]." Yet Johnson alleges no layoffs at his own facility, and does not refute Chesebrough's assertion that he was in a corporate division that could not be affected by plant closings. Indeed, he does not refute that part of his job description, as a member of the "strategic plan," was to close plants: any such closings would be more work for him, not less.
 
 
 13
 Chesebrough is allowed to fire or lay off an at-will employee. Therefore, for Johnson's fraudulent misrepresentation theory to fly, a jury would have to believe that Chesebrough (1) lured Johnson to Connecticut, knowing, or recklessly disregarding the risk that, he would probably be laid off eventually, yet bought his house and paid his moving expenses; (2) employed him for approximately a year; (3) staged an elaborate hoax to fire him; (4) then paid him a decent severance package. The hoax would have to involve Duncan setting him up to fail almost from his first day (i.e. shortly after they had paid for him to move there) or staging fits of anger at Johnson's offensive conduct. The fact that Johnson admits to having criticized Duncan to other employees and said directly confrontational things to Duncan and angered him would have to be explained as coincidence, or perhaps as mere evidence that Johnson had walked into Chesebrough's trap.
 
 
 14
 A jury could not reasonably credit these theories. Drawing every inference in favor of Johnson, there exists no material fact in dispute. Therefore, the district court properly dismissed these counts.
 
 
 15
 In Counts Three and Five, Johnson claimed that Duncan's oral statements at the March 13, 1991 meeting (putting Johnson on unofficial probation) and his written statement in a March 26 memorandum from Duncan to Johnson (memorializing the meeting and stating that Johnson's "job performance is unacceptable and must improve within three months") constituted an implied contract to employ Johnson for three more months. This argument is utterly meritless. At the beginning of his employment, Johnson signed an agreement stating that his employment was at-will and could not be made otherwise except by a writing signed by the president of Chesebrough or one of its directors. The oral statements and the memorandum clearly fail this test. Johnson claims that he signed the original form under duress, because he was first shown the form after he had travelled 200 miles to the interview and did not want to turn back. This argument ignores the fact that he was not required to take the job after the interview.
 
 
 16
 Johnson also alleges that Chesebrough violated an implied covenant of good faith and fair dealing inherent in these implied contracts. As the contracts do not exist, Chesebrough could not have violated implied covenants in them.
 
 
 17
 As Count Four of his complaint, Johnson alleged that Chesebrough was negligent in not following its own stated procedures relating to Johnson's termination. The district court dismissed this count on the ground that Connecticut does not recognize an action based on this theory. See Opinion at 14-15 (citing Morris v. Hartford Courant Co., 200 Conn. 676 (1986)). On appeal, Johnson appears to fold this negligence claim into his implied contract claim that, as we have just seen, is meritless: "Here, the plaintiff claims that the defendant acted negligently in failing to comply with established procedures and/or promises about the manner in which the plaintiff's allegedly poor performance would be managed." Appellant's Br. at 31. He does not dispute on appeal that the claim before this "and/or" is barred by Connecticut law. As the claim after the "and/or" is dependent on a meritless theory, see supra, this Count was properly dismissed also.
 
 
 18
 Johnson also claims that Chesebrough has defamed him by producing negative reviews of his work. The district court found that the statements at issue were opinions of the sort not actionable for defamation. See Opinion at 16 (citing Perruccio v. Arsenault, 7 Conn.App. 389, 394 (1986); Torok v. Proof, 1993 WL 28878, at * 2 (Conn.Super.Ct.1993)). This finding was not clearly erroneous.
 
 
 19
 Johnson also attempted to make out a claim for intentional or negligent infliction of emotional distress. See Petyan v. Ellis, 200 Conn. 243, 253 (1986). To satisfy the element of outrageousness required by this tort, Johnson merely points to his allegations generally, and the allegation that he was escorted from the building after his termination "like a criminal." Connecticut requires conduct "exceeding all bounds usually tolerated by decent society." Mellaly v. Eastman Kodak Co., 42 Conn. Supp. 17, 19 (Conn.Super.Ct.1991). Here, no reasonable juror could find that such routine occurrences as negative performance appraisals and being escorted from a building directly after being fired exceed all bounds of decent society. Therefore, summary judgment was properly granted.
 
 
 20
 Mrs. Johnson's consortium claims are dependent on Mr. Johnson's claims against Chesebrough, and therefore fall with them. See Hopson v. St. Mary's Hosp., 176 Conn. 485, 494 (1979).
 
 
 21
 Accordingly, summary judgment was properly granted in this matter and we affirm.
 
 
 
 *
 Of the United States District Court for the Eastern District of New York, sitting by designation