**Rose HILL, Plaintiff,**

v.

**PINKERTON SECURITY & IN-VESTIGATION SERVICES, INC., Defendant.**

**No. 3:96 CV 1045(GLG).**

United States District Court, D. Connecticut.

Sept. 11, 1997.

John O'Brien, Law Office of John O'Brien, Hartford, CT, for Plaintiff.

James M. Sconzo, James F. Shea, Halloran & Sage, Hartford, CT, for Defendant.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Plaintiff, ROSE HILL, has brought this state-law employment discrimination lawsuit against her employer PINKERTON SECU-RITY & INVESTIGATION SERVICES, INC., alleging violations of Connecticut's antidiscrimination statutes, as well as several common-law causes of action. The defendant has moved for summary judgment. For the reasons set forth below, defendant's motion **(doc. no. 21)** is GRANTED as to all counts of plaintiff's complaint.

## FACTS

The underlying facts in this action do not seem to be in dispute.[1] However, the conclusions to be drawn from the facts are disputed.

The plaintiff became employed by the defendant as a security officer in February of 1994, when defendant was awarded the contract to provide security services for ITT

1. Pursuant to Local Rule 9(c)1, the defendant has filed a Statement of Undisputed Material Facts comprised of 52 separate paragraphs. Pursuant to Local Rule 9(c)2, the plaintiff was to have filed a Statement of Material Facts as to which it is contended there exists a genuine issue to be tried. The plaintiff has not done that. Instead, plaintiff has filed her own Statement of Undisputed Material Facts. Since the defendants's Statement of Undisputed Material Facts has not been controverted as required by the rules, they can be deemed admitted. Local Rule 9(c)1. Moreover, the plaintiff's Statement of Material Facts confirms many of the defendant's state-

Hartford Insurance Group's site in Hartford. She had previously worked there since 1988 for the prior security company, Ogden Security, Inc. From 1988 to 1992, plaintiff had worked for Ogden on a part-time basis, after which she worked full-time. Pinkerton offered employment to substantially all of the Ogden employees who had been working at that site, at approximately the same wage rate at which they had been paid by Ogden.

The plaintiff is black. Defendant's supervisory framework is set up in a military-style chain of command, with security officers at the bottom rung. In June of 1995, plaintiff's immediate superior, a shift supervisor, and the operations manager were also black. The three other managers in her chain of command were white.[2]

In May of 1995, the plaintiff learned that several other security officers employed at the site were earning 25 cents per hour more than she was. In her complaint, plaintiff does not indicate the race or sex of these individuals. Defendant, however, states that the two employees of which plaintiff complained were black, female security guards, which is confirmed by plaintiff's deposition testimony. In June the plaintiff first approached her shift supervisor about the pay difference. She then requested that the accounts manager reevaluate her wage rate because of this wage differential. At no time, however, did the plaintiff indicate to defendant that she believed the wage differential was related to her race or sex.

Plaintiff's starting pay with the defendant was $7.75 per hour which was increased to $7.95 per hour in February 1995 a few months before the issue of the wage differential arose. About 20% of the security officers

ments and contradicts none of them. It does add some eight paragraphs of additional facts which we have included, at least in summary fashion, in the statement of facts below.

2. In June of 1995, plaintiff's chain of command was comprised of her shift supervisor, Captain Dareyell Howard, who is black; the assistant account manager, Mr. Robert Schultz, who is white; the account manager, Mr. Robert Maticke, who is white; the operations manager, Mr. Marshall Thomas, who is black and the district manager, Mr. David Harris, who is white.

in Hartford earned a higher rate of pay than plaintiff and some of them were in supervisory positions.[3]

After plaintiff discussed the pay differential with her account manager, the matter was investigated by her operations manager and accounts manager. They discovered that in 1989 Ogden Security had instituted a "Senior Security Officer" incentive program[4] under which certain officers who met designated service and performance standards were given a 25 cents per hour bonus.[5] This program was discontinued in late 1991 or early 1992, but those who had been receiving the bonus continued to do so. Because plaintiff was a part-time employee at the time this program was instituted, she was not eligible to participate. By the time she switched to full-time employment in 1992, the program no longer existed.

Plaintiff contends that almost immediately after she raised the question of the pay differential, several adverse steps were taken by defendant concerning her work situation. She complains that the time-keeping procedures were changed to deprive her of the fifteen-minute grace period for signing in, which she had previously enjoyed. At the time Pinkerton took over security operations for the ITT Hartford Insurance Group, plaintiff had another job as a clerk at the state library in Rocky Hill, which ended at the exact time that she was supposed to start her duties in Hartford. Plaintiff's account manager allowed her to arrive fifteen minutes late because of her second job, but she was allowed to clock in at the required 3:00 PM starting time and was paid for a full eight-hour shift. She states that after she complained of the pay differential, she was not given credit for the 15 minutes she was usually late for work and was paid only from the next nearest quarter hour.

Defendant asserts that the change in time-keeping was the result of an order issued on June 20, 1995, by the operations manager, who was black. This order applied to all security officers, not just plaintiff, and required them to sign in at the work site only when they were actually ready to report to work and at the nearest quarter hour to when they reported for duty. Defendant states that this order was the result of minor payroll discrepancies created by security officers' signing in at different times to begin the same shift, and unauthorized overtime costs created when security officers arrived early and signed in before their shifts were scheduled to begin.

Plaintiff also claims that she was questioned about the length of time it took for her to complete a patrol of her assigned areas and about why she had refused to provide a break for a guard in another area. She also complains that she was not allowed to go into her supervisor's office as she had been able to do before.

On June 26, 1995, plaintiff's work post at the ITT Hartford site and her break time were changed by management, according to defendant, in order to improve security coverage while reducing overtime costs. Other security officers were also assigned new work posts. The length of plaintiff's breaks and her compensation were not affected nor were her other benefits changed.

In July 1995, the plaintiff and her shift supervisor had a dispute over the plaintiff's refusal to sign removal passes (concerning removal of company property from the site) on two consecutive days, which she had refused to sign although given authorization to do so. A meeting was then held concerning her refusal to follow her shift supervisor's directions. As a result of this meeting, a

---

**3.** *See* Note 11, *infra.*

**4.** Plaintiff does not dispute the fact that this program was instituted by Ogden. She objected to defendant's continuation of the pay differential that continued to exist because of the earlier program. Presumably plaintiff would have wanted defendant to deduct 25 cents per hour from the pay rate of all security guards employed by defendant, who had received this pay increase some five years earlier.

**5.** The criteria for Senior Security Officer under Ogden's program were as follows:

 1. Appearance
 2. Performance
 3. Job Knowledge
 4. Cooperation with Others
 5. Full-time Service (1 year).

decision was made by her supervisors to transfer plaintiff from the ITT–Hartford work site. She was temporarily assigned to defendant's Wethersfield office on or about July 20, 1995. After a month she was then permanently assigned to defendant's Gold Building site in Hartford, where she continues to work at the same rate of pay at this time.

Plaintiff filed her complaint of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") on July 27, 1995.

The defendant contends, and the plaintiff has not denied, that she was offered a promotion to shift sergeant at One Financial Plaza on April 26, 1996, but turned down the offer of promotion because she did not want the added responsibilities without an increase in pay. Plaintiff was already making more than the shift sergeant being replaced.

### THE COMPLAINT

On June 11, 1996, plaintiff commenced this action in state court. Her state court action alleged essentially the same facts as set forth above, under six separate state-law counts. The defendant removed the case to federal court based on diversity of citizenship and that the amount in controversy exceeded the sum of $50,000.[6] The parties agree that, although the complaint is based only on state law claims, Connecticut courts have looked to federal precedent in the employment discrimination arena for guidance in enforcing the state antidiscrimination statutes. *See Levy v. Commission on Human Rights and Opportunities,* 236 Conn. 96, 103, 671 A.2d 349 (1996).

The First Count of the plaintiff's complaint alleges that defendant has engaged in discriminatory employment practices based upon the plaintiff's race and/or sex in violation of C.G.S.A. § 46a–58. The Second Count alleges that defendant discriminated against the plaintiff in her hourly rate of compensation and in creating a hostile work environment in violation of C.G.S.A. § 46a–60(a)(1). The Third Count of the complaint alleges that Pinkerton retaliated against the plaintiff due to her opposition to the alleged discriminatory employment practices of the defendant in violation of C.G.S.A. § 46a–60(a)(4). The Fourth Count alleges that the conduct of Pinkerton constituted sexual harassment of the plaintiff in violation of § 46a–60(a)(8). Finally, the Fifth and Sixth Counts of the complaint allege negligent and intentional infliction of emotional distress, respectively.

### DISCUSSION

Summary judgment may be granted only when the court determines from the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, that there is no genuine issue of material fact to be tried and that the moving party is entitled to summary judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. *See Gallo v. Prudential Residential Services, Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). The burden of establishing that no genuine factual dispute exists rests with the party seeking summary judgment. *Gallo,* 22 F.3d at 1223. In determining the existence of a genuine issue of material fact, we must view the evidence in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Gallo,* 22 F.3d at 1223. The moving party may obtain summary judgment by showing that little or no evidence may be found in the record in support of the nonmoving party's case. *Gallo,* 22 F.3d at 1223. When no rational jury could find in favor of the nonmoving party because the evidence in support of its case is so slight, there is no genuine issue of material fact and the grant of summary judgment is proper. *Id.*

---

**6.** Twenty-five cents an hour amounts to about ten dollars a week or five hundred dollars per year. It would take one hundred years for the claimed lost wages to exceed $50,000. However, the plaintiff has made claims of emotional and psychological distress which theoretically could bring the damages above $50,000. (The jurisdictional amount under 28 U.S.C. § 1332 was increased to $75,000, effective January 17, 1997).

The substantive law governing the case identifies those facts that are material on a motion for summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). Within this framework, we review the facts of this case with respect to each of plaintiff's counts for purposes of determining whether the defendant is entitled to summary judgment as to any or all of the plaintiff's claims.

### Count I—C.G.S.A. § 46a–58(a)

■ Plaintiff's first count is brought under C.G.S.A. § 46a–58 (a). The Connecticut Supreme Court held in *Commission on Human Rights and Opportunities v. Truelove and Maclean, Inc.,* 238 Conn. 337, 346, 680 A.2d 1261 (1996), that section 46a–58(a) does not encompass claims of discriminatory employment practices that fall within the purview of section 46a–60. The only alleged violations of C.G.S.A. § 46a–58(a) in plaintiff's complaint relate to alleged discriminatory employment practices. Because the more specific, narrowly tailored cause of action embodied in section 46a–60 supersedes the general cause of action in section 46a–58(a), plaintiff has failed to state a cause of action in Count I for violation of section 46a–58(a). Therefore, we find that defendant is entitled to summary judgment as a matter of law on Count I of plaintiff's complaint. *See Commission on Human Rights and Opportunities v. Truelove and Maclean, Inc.,* 238 Conn. at 346, 680 A.2d 1261.

### Count II—C.G.S.A. § 46a–60(a)(1)

Count II alleges violations of C.G.S.A. § 46a–60(a)(1) by virtue of the pay differential between plaintiff and other security guards and the allegedly hostile work environment. We begin by considering plaintiff's "discrimination in compensation" claim under the standards set forth for a claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* and the Equal Pay Act, 29 U.S.C. § 206(d), both of which prohibit compensation discrimination. *See Levy, supra,* 236 Conn. at 103 n. 10, 671 A.2d 349.

Plaintiff complains that the twenty-five cent per hour pay differential between what she was paid as a security guard and what "several other Security Guards Employed by the Defendant and similarly situated to Plaintiff were earning," (Plaintiff's Complaint, Count II, ¶ 9), was a discriminatory practice in violation of C.G.S.A. § 46a–60(a)(1). Thus, plaintiff's claim is based upon a disparate treatment theory of discrimination. *Levy, supra,* 236 Conn. at 103 n. 10, 671 A.2d 349. There are two general methods of allocating the burden of proof in a disparate treatment case, such as this: (1) the mixed motive/*Price Waterhouse*[7] model, which plaintiff contends applies to the facts of this case; and (2) the pretext/*McDonnell Douglas–Burdine*[8] model, which defendant contends applies. *See Id.* at 104–05, 671 A.2d 349.

■ When an employment decision is motivated by both legitimate and illegitimate reasons, the "mixed-motive" model applies. In order to state a *prima facie* case under this model, the plaintiff must demonstrate that she was within a protected class and that the employer's decision was motivated by one or more prohibited statutory factors. *Id.* at 105–06, 671 A.2d 349. In this case, plaintiff has failed to produce even a scintilla of evidence to support her claim that her race or sex was a "motivating" factor in the defendant's paying her twenty-five cents per hour less than other employees. *See Price Waterhouse,* 490 U.S. at 258, 109 S.Ct. at 1794–95. Indeed, plaintiff does not even allege that the other security guards who were paid more than she was paid were male

---

7. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 246, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989).

8. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981).

and/or white. On the contrary, her deposition testimony and the unrebutted evidence submitted by defendant shows that the two security guards about whom plaintiff complained regarding the pay differential were black females.[9] Plaintiff has not alleged sufficient facts to carry her burden of proof of alleging a *prima facie* case of discrimination based upon a mixed-motive model. Our inquiry does not end here, however.

■ As the Connecticut Supreme Court recognized in the *Levy* decision, often a plaintiff cannot prove directly the reasons that motivated an employment decision. In that case, the plaintiff may meet the less onerous burden of establishing a *prima facie* case by showing that (1) he or she belongs to a protected class; (2) he or she applied for the position in question; (3) despite his or her qualifications, he or she was rejected; and (4) after being rejected, the position remained open. 236 Conn. at 107–08, 671 A.2d 349, (*citing Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093–94, *and Miko v. Commission on Human Rights & Opportunities*, 220 Conn. 192, 203, 596 A.2d 396 (1991)). In the context of wage discrimination claims under Title VII, a plaintiff must show that she performed work substantially equal to that of white or male employees who were compensated at a higher rate of pay than she was. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1087 (3d Cir.1996). Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating some legitimate, nondiscriminatory reason for the plaintiff's rejection, or in this case, the lower rate of pay. *Levy*, 236 Conn. at 108, 671 A.2d 349, (*citing Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094, *and Miko*, 220 Conn. at 204, 596 A.2d 396). Once the defendant offers a legitimate, nondiscriminatory reason for the pay differential, the plaintiff then has the opportunity to prove by a preponderance of the evidence that the proffered reason is pretextual and that the real reason for differ-

ential was plaintiff's race or sex. *Id.* at 108, 671 A.2d 349, (*citing Burdine*, 450 U.S. at 255–56, 101 S.Ct. at 1094–95 *and Miko*, 220 Conn. at 204, 596 A.2d 396); *see also Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 129 (2d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997).

■ Even if we were to find that plaintiff had satisfied the minimal requirements of establishing a *prima facie* case of discrimination under the *McDonnell Douglas–Burdine* model, once the defendant has articulated a nondiscriminatory reason for the pay differential, plaintiff must show that there is a material issue of fact as to whether the employer's asserted reason was pretextual and that the real reason for the difference in pay was her race and/or sex. *Fisher v. Vassar College*, 114 F.3d 1332, 1333 (2d Cir.1997), *Holt*, 95 F.3d at 130; *Woroski v. Nashua Corp.*, 31 F.3d 105, 108–09 (2d Cir.1994). In this case, defendant has provided unrebutted evidence of a nondiscriminatory reason for the pay differential—*i.e.* that it was inherited from the prior security company and was based upon a bonus system for which plaintiff did not qualify because she worked only part-time when the bonus program was in effect. Plaintiff has failed to offer any evidence whatsoever to contradict this evidence to establish a genuine issue of material fact as to defendant's proffered reason for the pay differential or to show that this was a pretext for discrimination. *See Holt*, 95 F.3d at 130.

As the Second Circuit recognized in *McLee v. Chrysler Corp.*, 109 F.3d 130 (2d Cir.1997), although caution must be exercised in granting summary judgment where motive is genuinely an issue, summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact. 109 F.3d at 135, (*citing Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 19 (2d Cir.1995); *McLee v. Chrysler Corp.*, 38 F.3d 67, 68 (2d Cir. 1994); *and Woroski v. Nashua Corp.*, 31

9. Defendant has also provided unrefuted evidence that the 23 security officers (out of 124 at the ITT Hartford Group site) who received a higher rate of pay than plaintiff consisted of 2 white women, 4 black women, 6 black males, 4 Hispanic males, and 7 white males. Of the 23, 9 were rank officers in supervisory positions above the plaintiff. We do not, however, know the race or sex of all of the 124 security officers.

F.3d at 110); *see also Holt*, 95 F.3d at 130. In this case, there is no reasonable inference that can be drawn from the undisputed evidence that would rebut the nondiscriminatory, race and sex neutral reasons offered by defendant to explain the pay differential. There simply is no genuine issue of material fact to be submitted to a jury. Accordingly, we find under either the "mixed-motive" model or the pretext/*McDonnell Douglas–Burdine* model that defendant is entitled to summary judgment on plaintiff's claim of compensation discrimination under C.G.S.A. § 46a–60(a)(1).

█ The result would be no different were we to look to the Federal Equal Pay Act, 29 U.S.C. § 206(d), for guidance. In order to state a *prima facie* case of salary discrimination based upon sex under the Equal Pay Act, a plaintiff must demonstrate (1) that the employer pays different wages to employees of the opposite sex; (2) that the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) that the jobs were performed under similar working conditions. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir.1995). Plaintiff has neither alleged the requisite elements of a claim under the Equal Pay Act nor has she provided facts which would support such a claim. Plaintiff has not cited to a single similarly situated male employee who was paid more than she. She simply states that other security guards were paid more. These allegations will not support a claim under the Equal Pay Act.

█ Plaintiff's second claim within Count II is for hostile work environment. The Supreme Court has defined a hostile work environment as a workplace which "is permeated with '*discriminatory* intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (citations omitted) (emphasis added). A claim for hostile work environment exists when the employer's discriminatory conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment." *Tomka v. Seiler*, 66 F.3d 1295, 1305 (2d Cir.1995) (*quoting Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986)). The Supreme Court has instructed that the totality of the circumstances must be considered in a hostile environment case. *Harris*, 510 U.S. at 23, 114 S.Ct. at 371. Factors which should be considered include the frequency of the discriminatory conduct, its severity, whether it is physically threatening, or whether it interfered with an employee's work performance. *Harris*, 510 U.S. at 22, 114 S.Ct. at 370–71.

█ Plaintiff alleges a hostile work environment by virtue of the following:

(a) The defendant initially denied that a pay differential between guards existed;

(b) The defendant later classified the pay differential as a "superior guard" bonus;

(c) The defendant gave excuses for plaintiff's not receiving the bonus, including placing blame on plaintiff's prior employer;

(d) The defendant failed to inquire into the matter and became quite disturbed when plaintiff further inquired;

(e) The defendant became increasingly hostile and unfriendly to the plaintiff due to her further inquiry;

(f) The defendant again classified such pay differential as "senior security officer program," alleging plaintiff was not eligible;

(g) The defendant began to make unjustified complaints regarding plaintiff's time and frequency of rounds;

(h) The defendant banned plaintiff from the office and told her not to enter unless it was to sign in;

(i) On or about June 26, 1995, the defendant arbitrarily changed plaintiff's work post where she had been assigned for over 8 years;

(j) The defendant arbitrarily changed the plaintiff's lunch break times;

(k) The defendant falsely accused plaintiff of not complying with a company order to sign an authorization for a removal pass;

(*l*) The defendant told plaintiff not to come to work but to come to the office to discuss a transfer; and

(m) The defendant temporarily assigned plaintiff to another office.[10]

There is nothing in the facts alleged by plaintiff that would support her claim that the actions taken by defendant created an atmosphere that was abusive or hostile because of plaintiff's race or sex—*i.e.*, that the alleged hostile environment was created by race-related or sex-related conduct on the part of defendant. This is a fundamental and necessary element of a hostile environment claim under Title VII. *See Harris,* 510 U.S. at 20, 114 S.Ct. at 369–70. Moreover, even if a reasonable inference could be drawn that these actions were racially or sexually discriminatory, the alleged activities are legally insufficient to objectively establish the existence of a hostile work environment, as defined by the Supreme Court. *See Harris,* 510 U.S. at 21, 114 S.Ct. at 370; *Kotcher v. Rosa and Sullivan Appliance Center, Inc.,* 957 F.2d 59, 62 (2d Cir.1992). Therefore, we find that defendant is entitled to summary judgment on Count II of plaintiff's complaint.

*Count III—C.G.S.A. § 46a–60(a)(4)*

Plaintiff's third count is one for unlawful retaliation by defendant in violation of C.G.S.A. § 46a–60(a)(4). Section 60(a)(4) provides that it is a discriminatory employment practice for an employer to discriminate against any person because he or she has opposed any discriminatory employment practice or because he or she has filed a complaint with the Connecticut Commission on Human Rights and Opportunities. The actions of which plaintiff complains are those set forth in subparagraphs (a) through (m) above, as well as her reassignment after she filed a discrimination complaint with the CCHRO.

■ This claim is similar to a claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–3(a), for retaliation, which is analyzed under the three-part burden shifting analysis of *McDonnell Doug-*

las *v. Green, supra.* In order to establish a claim under Title VII for retaliation, plaintiff must show that: (1) she was engaged in an activity protected by Title VII; (2) the employer was aware that plaintiff was engaged in the protected activity; (3) the plaintiff suffered a disadvantageous employment action; and (4) a causal relation exists between the protected activity and the employment action. *Dortz v. City of New York,* 904 F.Supp. 127, 156 (S.D.N.Y.1995), (*citing Cosgrove v. Sears, Roebuck and Co.,* 9 F.3d 1033, 1042 (2d Cir.1993)); *see Holt, supra,* 95 F.3d at 130; *Tomka v. Seiler Corp.,* 66 F.3d at 1308.

■ It is only if the plaintiff makes this initial showing that the burden of production shifts to the defendant to rebut the presumption of discrimination by presenting evidence of a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824; *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 199 (2d Cir.1995). The plaintiff must then demonstrate that a discriminatory reason more likely than not motivated the employer and that the employer's proffered explanation is unworthy of credence. *Fisher v. Vassar College, supra,* 114 F.3d at 1333; *McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825–26.

■ With respect to her claim that she was retaliated against by defendant for complaining of the pay differential, as discussed above, plaintiff has failed to come forth with even a scintilla of evidence from which we could reasonably infer that the pay differential was a discriminatory employment practice. There is absolutely no evidence in the record to support her claim that the pay differential in any way related to plaintiff's race or sex or that plaintiff ever suggested to defendant that it was related to her race or sex. Thus, plaintiff has not met her initial *prima facie* burden of showing that she was engaged in a protected activity or that the

---

**10.** Plaintiff also alleges that after she filed her complaint with the Connecticut Commission on Human Rights and Opportunities, the defendant found a permanent position for her at the Gold

Post Building. This claim will be discussed in the context of her retaliation claim in Count III, *infra.*

defendant knew that she was engaged in a protected activity.

██ Plaintiff also claims that she was retaliated against for filing her complaint with the CCHRO. The only adverse action of which she complains was taken after her complaint was filed. This was her permanent reassignment to the Gold Building post. Plaintiff's filing a complaint of discrimination was clearly a protected activity, and defendant's knowledge of the complaint satisfies the first two prongs of plaintiff's *prima facie* case of retaliation. However, as discussed above, plaintiff must also demonstrate she suffered an adverse employment action and the cause-and-effect relationship between her filing a complaint of discrimination and the subsequent action taken by the employer. *See LaFond v. General Physics Services Corp.*, 50 F.3d 165, 173 (2d Cir.1995); *Valencia v. St. Francis Hospital and Medical Center*, No. CV 940538867S, 1996 WL 218760, at *4 (Conn.Super. April 3, 1996).

██ As plaintiff points out, in retaliation cases brought under Title VII, the law "does not define adverse employment action solely in terms of job termination or reduced wages and benefits, and that less flagrant reprisals by employers may indeed be adverse." *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir.1997) (citations omitted). Further, "[b]ecause there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'" *Id.* (citations omitted). While we have difficulty in finding that plaintiff's lateral reassignment, without a change in pay or benefits, was an adverse employment action, we recognize that there have been cases, albeit arguably distinguishable, that have found a reassignment to meet the requirements of an adverse employment action. *See, e.g., Rodriguez v. Board of Education*, 620 F.2d 362, 364–66 (2d Cir.1980); *de la Cruz v. New York City Human Resources Adm. Dept.*, 82 F.3d 16, 21 (2d Cir.1996). Thus, we turn to the fourth prong of plaintiff's *prima facie* case of retaliation.

██ For purposes of plaintiff's meeting her *de minimis* burden of proving a *prima facie* case of retaliation, a causal connection may be established indirectly by showing that the protected activity was closely followed in time by discriminatory treatment. *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir.1991),(*citing DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 115 (2d Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987)). In this case, there is at least a temporal association between plaintiff's filing her discrimination complaint and the permanent reassignment. Thus, we find that plaintiff has sustained her *de minimis* burden of proving a *prima facie* case of retaliation as a result of her filing her CCHRO complaint.

██ The burden now shifts to defendant to articulate a legitimate, nondiscriminatory reason for its action. *Johnson*, 931 F.2d at 207. The affidavits of plaintiff's supervisors indicate that the decision to transfer plaintiff was made prior to the filing of her CCHRO complaint and was the result of disciplinary action taken because of her failure to follow her shift supervisor's instructions. The assignment to Wethersfield was temporary until a permanent assignment could be found. In her deposition, plaintiff testified that her supervisor asked her how she would feel about working in the Wethersfield office until he found her a permanent assignment (other than ITT–Hartford) and she responded that she had no problem with this. (Plaintiff's deposition at pp. 62–63). Then in August, she was permanently assigned to the Gold Building in Hartford. Thus, although this permanent reassignment took place after the CCHRO complaint was filed, it was the result of a disciplinary decision made prior thereto and completely unrelated to the filing of the CCHRO complaint.

Once an employer offers a legitimate, nondiscriminatory reason that explains the adverse action and the timing, the plaintiff must offer some evidence from which the jury could infer that retaliation was the real motive for defendant's actions. *Swanson v. General Services Administration*, 110 F.3d 1180, 1188 (5th Cir.1997). The evidence of record stands unrebutted that the decision to reassign plaintiff was made prior to her filing her complaint and was made as a result of

disciplinary action taken against the plaintiff because she failed to follow orders. We find that defendant is entitled to summary judgment on Count III.

### Count IV—C.G.S.A. § 46a-60(a)(8)

 Plaintiff's fourth count alleges that the same practices by defendant described above constitute sexual harassment of her in violation of C.G.S.A. § 46a–60(a)(8). Section 46a–60(a)(8) defines "sexual harassment" as

> any unwelcome sexual advances or requests for sexual favors or any other conduct of a sexual nature when (A) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (B) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (C) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

First, we note that plaintiff has failed to allege any unwelcome sexual advances, any requests for sexual favors, or any other conduct of a sexual nature on behalf of any employee of defendant. For that reason alone, plaintiff's claim would not fall within the definition of "sexual harassment" set forth in C.G.S.A. § 46a–60(a)(8). Moreover, for the reasons set forth under our discussion of Count II above, the facts of this case do not rise to the level of a sexually hostile work environment claim. Therefore, we find that defendant is entitled to summary judgment on Count IV of plaintiff's complaint.

### Count V—Negligent Infliction of Emotional Distress

 The fifth count of plaintiff's complaint alleges negligent infliction of emotional distress. To prove such a claim, plaintiff must establish that the defendant knew or should have known "that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." *Montinieri v. Southern New England Telephone Co.*, 175 Conn. 337, 345, 398 A.2d 1180 (1978); *Johnson v. Chesebrough–*

*Pond's USA Co.*, 918 F.Supp. 543, 553 (D.Conn.) (*citing Buckman v. People Express, Inc.*, 205 Conn. 166, 173, 530 A.2d 596 (1987)), *aff'd* 104 F.3d 355 (2d Cir.1996). From the facts alleged, no reasonable jury could find that such routine employment occurrences as plaintiff experienced were so unreasonable that the defendant knew or should have known that its conduct involved an unreasonable risk of causing emotional distress which might result in illness or bodily harm. *See Johnson v. Chesebrough–Ponds*, 104 F.3d 355, 1996 WL 734043, *2.

The Connecticut courts have held that employment actions taken by a defendant, even if wrongful, are not enough to sustain a claim for negligent infliction of emotional distress. *Parsons v. Sikorsky Aircraft Div.*, No. 280394, 1996 WL 176378, *9 (Conn.Super.Mar.1, 1996). Such a claim must be accompanied by additional allegations of unreasonable conduct on the part of the defendant that occurred with respect to the employment actions. *See Parsons* (granting defendant's motion to strike the negligent infliction, of emotional distress claim with respect to plaintiff's termination of employment); *Montinieri*, 175 Conn. at 340, 398 A.2d 1180.

Plaintiff may not have been satisfied with the way defendant handled the investigation of her compensation complaint, but there is nothing in the record that would suggest that defendant acted so unreasonably that its actions would sustain an action for negligent infliction of emotional distress. Therefore, summary judgment is granted in favor of defendant on Count V of plaintiff's complaint. *See Johnson, supra.*

### Count VI

In count six, plaintiff alleges intentional infliction of emotional distress by defendant as a result of the employment actions taken by defendant. She alleges in conclusory fashion that defendant's conduct was extreme and outrageous and that defendant knew, intended, and should have known that emotional distress was likely to result. (Plaintiff's Complaint, Count VI, ¶ 12).

 Under Connecticut law, to state a cause of action for intentional infliction of emotional distress, a plaintiff must allege

that: (1) defendant intended or knew that emotional distress would likely result from its conduct; (2) defendant's conduct was extreme and outrageous; (3) defendant's conduct caused plaintiff distress: and (4) plaintiff's distress was severe. *Vorvis v. Southern New England Telephone Co.,* 821 F.Supp. 851, 855 (D.Conn.1993), (*citing Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986)).

In interpreting what constitutes "extreme and outrageous" conduct, Connecticut courts have relied on the Restatement (Second) of Torts § 46, comment (d) (1965), which provides: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See DeLaurentis v. City of New Haven,* 220 Conn. 225, 266–67, 597 A.2d 807 (1991); *Petyan v. Ellis,* 200 Conn. at 254 n. 5, 510 A.2d 1337.

■ Whether a defendant's conduct rises to the level of being "extreme and outrageous" is a question to be determined by the court in the first instance. *See, e.g., Johnson v. Chesebrough Ponds,* 918 F.Supp. at 552.

■ Here, plaintiff alleges no more than that she received twenty-five cents per hour less than other security guards and that when she brought this to the attention of defendant and began investigating she was subjected to adverse employment conditions, including being transferred to two other locations, being disciplined, and being reprimanded. Plaintiff has not alleged that any of the employment actions taken by defendant were done in a manner so egregious or oppressive as to rise to the level of extreme and outrageous conduct.

Therefore, as a matter of law, we find that plaintiff has failed to allege conduct on the part of defendant from which a reasonable jury would be permitted to infer that defendant's conduct was sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress. *See Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1242 (2d Cir.1995); *Kintner v. Nidec–Torin Corp.,* 662 F.Supp. 112, 114 (D.Conn.1987).

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is GRANTED as to all counts of the plaintiff's complaint.