Margaret MINER

v.

TOWN OF CHESHIRE, et al.

No. Civ.A.3:99CV2334SRU.

United States District Court,
D. Connecticut.

Sept. 29, 2000.

Robert M. Fortgang, Simsbury, CT, for Plaintiff.

Gary S. Starr, Shipman & Goodwin, Michael J. Rose, Bruce J. Gelston, Howd & Ludorf, Hartford, CT, for Defendants.

## *RULING ON MOTIONS TO DISMISS*

UNDERHILL, District Judge.

Plaintiff Margaret Miner ("Miner") brings this action seeking damages and other relief in connection with alleged sexual harassment and retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn.Gen.Stat. § 46a–60. Miner also seek damages and other relief for the following causes of action under Connecticut common law: intentional infliction of emotional distress; negligent infliction of emotional distress; civil battery and assault; negligent supervision; breach of the implied covenant of good faith and fair dealing and defamation. Currently pending is the defendant Town of Cheshire's ("the Town") Motion to Dismiss (**doc.# 12**) and the defendant Kerry Deegan's ("Deegan") Motion to Dismiss (**doc.# 14**). For the reasons stated herein, the Town's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Deegan's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

### *BACKGROUND*

*Facts*

For the purposes of the motions to dismiss, the court assumes the following facts set forth in the plaintiff's amended complaint to be true. Miner was employed as a police officer with the Town of Cheshire Police Department. Deegan is a Lieutenant with the Cheshire Police Department and was the plaintiff's Shift Commander.

Miner alleges that, in August 1997, Deegan forced Miner to kiss him in an elevator. At or around the same time, Deegan grabbed Miner's hand and placed it on his crotch. Miner alleges that, on at least one occasion, Deegan grabbed one of plaintiff's breasts. Miner alleges that, on several

occasions, Deegan drove by her house and made numerous phone calls to the plaintiff at her home.

Miner repeatedly told Deegan to leave her alone. Notwithstanding her protests, Deegan continued to harass the plaintiff and to make various overtures towards her. Accordingly, Miner complained to the Cheshire Police Department on several occasions. The Cheshire Police Department conducted an investigation and certain restrictions were placed upon Deegan. Specifically, Deegan was not to work the same shifts as Miner and, for some period of time, Deegan was placed on paid leave. Miner alleges that, upon Deegan's return from paid leave, however, the harassment continued.

Miner claims that, in retaliation for her reporting the alleged sexual harassment, Deegan began to spread false rumors about her throughout the police force and the Cheshire community.

On May 19, 1998, Miner injured her back while working and subsequently filed a workers' compensation claim for the injuries she sustained. Miner alleges that Deegan and the Cheshire Police Department questioned the origin and severity of her injuries and, to this date, have contested Miner's workers' compensation claim. Miner alleges that the defendants contest her claim because she is a female and because she pursued her sexual harassment complaint. She alleges that similar workers' compensation complaints by male officers have not been contested.

Miner alleges that she was forced to leave her job as a police officer because of the sexual harassment, the defendants' response to her complaints, and the emotional distress she sustained because of the harassment. Moreover, Miner claims that harassment from other management officials created a hostile work environment that made it impossible for her to perform her job duties or for her to reasonably believe that her complaints of sexual harassment would be taken seriously.

On or about December 21, 1998, Miner filed complaints with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunities Commission ("EEOC"). In response to these complaints, the Town offered Miner her job back with the same work restrictions placed upon Deegan as before. Relying on representations that Deegan would not harass her and that she would suffer no retaliation, Miner withdrew from college and returned to the Cheshire Police Department.

On or about March 29, 1999, a fellow officer asked Miner to switch shifts with him for that day. Although Miner would be working on Deegan's shift, Miner agreed to work that night. An Officer Fasano, knowing about the work restrictions on Deegan, agreed with Miner to work at the dispatch desk with Deegan that night. Notwithstanding this arrangement, Deegan demanded that Miner work alone with Deegan at the front desk. Miner refused to work alone with Deegan. When Deegan insisted, Miner left the police station. Deegan issued a written reprimand of the plaintiff for insubordination and neglect of duty.

The next day, the Cheshire Police Department, in light of Deegan's written warning, accused Miner of insubordination and neglect of duty. The Cheshire Police Department informed Miner that there were no work restrictions on Deegan. Miner alleges that the hostile and offensive work environment created by Deegan forced her to resign.

***DISCUSSION***

*Standard for a Motion to Dismiss*

A motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The function of a motion to dismiss is "merely to assess the

legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984), *quoting Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). The motion must therefore be decided solely on the facts alleged. *See Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir.1985).

When deciding a motion to dismiss for failure to state a claim on which relief can be granted, the court must accept the material facts alleged in the complaint as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff. *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996); *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir.1995); *Skeete v. IVF America, Inc.*, 972 F.Supp. 206, 207 (S.D.N.Y.1997). The court "must not dismiss the action 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim which would entitle [the plaintiff] to relief.'" *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994). The issue is not whether the plaintiff will prevail, but whether she should have the opportunity to prove her claims. *See Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*The Town's Motion to Dismiss*

The Town moved to dismiss Counts One, Three, Four, Five, Six, Seven and Eight of the plaintiff's initial complaint. These counts are, respectively: sexual harassment in violation of Title VII, sexual harassment and retaliation in violation of CFEPA, intentional infliction of emotional distress, negligent infliction of emotional distress, civil battery and assault, negligent supervision and breach of the implied covenant of good faith and fair dealing. Because they set forth the same causes of action, the court treats the Town's Motion to Dismiss as directed at Counts One, Three, Four, Five, Six, Seven and Eight of the plaintiff's Amended Complaint.[1]

*Counts One and Three (Sexual Harassment in Violation of Title VII and CFEPA)*

The Town argues that Miner's claims of sexual harassment in 1997 are barred by the applicable limitations period. The Town claims that complaints must be filed with the EEOC within 300 days of an alleged violation if a complaint first has been filed with a comparable state commission such as the CHRO. Similarly, they argue that the CHRO has a 180–day "look-back" period that also operates as a statute of limitations.

The Town argues that Miner first filed her complaint with the CHRO on December 21, 1998. Accordingly, the 300–day EEOC period covers violations occurring after February 24, 1998 and the CHRO period covers back to June 23, 1998. Miner's complaint, however, alleges incidents of sexual harassment that allegedly occurred in August and September 1997. Thus, the Town argues, such conduct is outside the scope of either limitations period.

In opposition, Miner argues that her allegations are timely pursuant to the continuing violations doctrine.

Because federal law on this issue is applicable to CFEPA, the court will analyze counts one and three together. *See Maloney v. Connecticut Orthopedics, P.C.*, 47 F.Supp.2d 244, 247 (D.Conn.1999), *citing Malasky v. Metal Products Corp.*, 44 Conn.App. 446, 454, 689 A.2d 1145 (1997),

1. The pending motions are directed at the initial complaint and the parties never sought leave to treat them as directed at the amended complaint. The motions could therefore be denied as moot and without prejudice to refiling in light of the plaintiffs' Amended Complaint. Nevertheless, because the court is inclined to consider the claims of the motions on the merits rather than decline to hear them on procedural grounds that may only serve to delay this matter further, the court considers and interprets the pending motions as if directed at the Amended Complaint.

*cert. denied,* 241 Conn. 906, 695 A.2d 539 (1997).

*Statute of Limitations*

Title VII requires plaintiffs to exhaust administrative remedies prior to filing an action for damages in federal court. *See* 42 U.S.C. § 2000e–5; *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Brown v. General Services Admin.,* 425 U.S. 820, 832–33, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Blake–McIntosh v. Cadbury Beverages, Inc.,* No. 3:96cv2554(EBB), 1999 WL 643661 at *6 (D.Conn.1999). First, the plaintiff must file a complaint with a state or local fair employment opportunity commission if one exists. *See* 42 U.S.C. § 2000e–5(c); *Great American Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 373, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Blake–McIntosh,* 1999 WL 643661 at *6. Second, the plaintiff must file a timely charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e–5(e); *Blake–McIntosh,* 1999 WL 643661 at *6. Finally, the plaintiff must receive a right-to-sue letter from the EEOC and file suit within 90 days. *See* 42 U.S.C. § 2000e–5(f)(1); *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Blake–McIntosh,* 1999 WL 643661 at *6.

Where the plaintiff first files discrimination charges with a state agency, district courts may hear only those claims involving discriminatory acts that were raised before the EEOC and that occurred within 300 days of the date the EEOC charge was filed. *See* 42 U.S.C. § 2000e–5(e); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir.1998). To determine the timeliness of an EEOC complaint and an ensuing lawsuit, the court must identify the dates on which the alleged discriminatory acts took place. *See Delaware State College v. Ricks,* 449 U.S. 250, 256–62, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Blake–McIntosh,* 1999 WL 643661 at *6.

Miner filed her EEOC charge on December 21, 1998, *see* Am.Compl. ¶ 46, thus preserving her right to seek judicial review of those acts transpiring on or after February 24, 1998. *See Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir.1996); *Blake–McIntosh,* 1999 WL 643661 at *6. The plaintiff's claims based upon sexual harassment allegedly occurred in August and September 1997 and, accordingly are time-barred because they happened prior to February 24, 1998. Miner argues, however, that these acts were committed as part of a "continuing violation."

*Continuing Violation*

"[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes,* 455 U.S. at 393, 102 S.Ct. 1127. A limitations period may be tolled by offering evidence of a "continuing violation," so long as at least one allegation falls within the appropriate statutory period. *See Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Carrasco v. New York City Off–Track Betting Corp.,* 858 F.Supp. 28, 31 (S.D.N.Y.1994), *aff'd,* 50 F.3d 3 (2d Cir.1995); *Martinez v. United Technologies Corp., Pratt & Whitney Aircraft Division,* No. Civ 3:97cv02471(AHN), 1998 WL 342043 at *2 (D.Conn.1998); *Wingfield v. United Techs. Corp.,* 678 F.Supp. 973, 979 (D.Conn.1988). The continuing violations doctrine extends "the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations." *Annis v. County of Westchester,* 136 F.3d 239, 246 (2d Cir.1998) (internal brackets and quotations omitted).

A continuing violation may be found "where there is proof of specific ongoing discriminatory policies or prac-

tices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). Examples of continuing violations cited with approval by the Second Circuit include use of discriminatory seniority lists or employment tests. *See Van Zant,* 80 F.3d at 713; *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993). Discrete incidents or even similar multiple incidents of discrimination that do not result from discriminatory policies or mechanisms, however, do not amount to a continuing violation. *See* Quinn, 159 F.3d at 765; *Cornwell,* 23 F.3d at 704. Moreover, courts in this circuit disfavor application of the continuing violations doctrine and hold that only compelling circumstances warrant use of this exception to the statute of limitations. *See, e.g., Sharkey v. Lasmo (AUL Ltd.),* 992 F.Supp. 321, 334 (S.D.N.Y.1998); *Martinez,* 1998 WL 342043 at *2; *Bawa v. Brookhaven Nat'l Laboratory Associated Univs., Inc.,* 968 F.Supp. 865, 868 (E.D.N.Y.1997); *Samimy v. Cornell Univ.,* 961 F.Supp. 489, 494 (W.D.N.Y.1997); *Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408, 1415 (S.D.N.Y.1989).

"[A] continuing violation can be established by showing either (1) that the ... incidents of discrimination against plaintiff constitute a series of related acts or (2) that defendant's actions were taken pursuant to the maintenance of a discriminatory system both before and during the limitation period." *Martinez,* 1998 WL 342043 at *2, *citing Wingfield v. United Techs. Corp.,* 678 F.Supp. 973, 979 (D.Conn.1988); *see also Urashka v. Griffin Hospital,* 841 F.Supp. 468, 472 (D.Conn.1994) ("To establish a continuing violation a plaintiff would have to show a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the limitations period.") (internal brackets and quotations omitted; citations omitted).

In order to claim that discriminatory acts constitute a series of related acts, "it must be clear that the acts complained of are not completed, distinct occurrences." *Martinez,* 1998 WL 342043 at *2, *quoting Yokum v. St. Johnsbury Trucking Co.,* 595 F.Supp. 1532, 1534 (D.Conn.1984). In addition, "[a] continuing violation ... may not be based on the continuing effects of an earlier discrimination or on a completed act of discrimination." *Martinez,* 1998 WL 342043 at *2, *citing United Air Lines v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907–08 (2d Cir.1997) ("[a] continuing violation is not established merely because an employee continues to feel the effects of a discriminatory act"); *Blesedell,* 708 F.Supp. at 1414; *Shelford v. New York State Teachers Retirement System,* 889 F.Supp. 81, 85 (S.D.N.Y.1993) ("the mere continuation of a discriminatory act's effect, however painful those effects may be, is not sufficient to rescue a stale claim concerning a violation that occurred prior to the limitations period."); *Malarkey v. Texaco, Inc.,* 559 F.Supp. 117, 120 (S.D.N.Y.1982) (recognizing that "the critical question is whether any present violation exists"), *aff'd,* 704 F.2d 674 (2d Cir.1983).

As currently pled, the only specific acts of sexual harassment set forth in the amended complaint are distinct occurrences that were completed in or around August or September 1997. Miner sets forth no specific acts of *sexual harassment* that occurred after this time. Rather, the remaining claims set forth in the amended complaint are pled in terms of *retaliation*—for which Miner has brought separate causes of action. *See, e.g.,* Am.Compl. ¶ 34 ("*In retaliation for filing a complaint of sexual harassment,* Mr. Deegan began to spread false rumors about the plaintiff throughout the police force and throughout the Cheshire community.") (emphasis added); Am.Compl. ¶ 42 ("Defendant Cheshire Police Department and Mr. Deegan have contested plaintiff's Workers' Compensa-

tion Claim because plaintiff is a female *and because she filed a complaint of sexual harassment.*") (emphasis added); Am. Compl. ¶ 59 ("Mr. Deegan's demand that plaintiff work alone with him *was in retaliation for plaintiff filing a complaint with the CHRO.*") (emphasis added); Am. Compl. ¶ 60 ("the written reprimand that plaintiff received from Mr. Deegan *was in retaliation for plaintiff filing a complaint with the CHRO.*") (emphasis added); Am. Compl. ¶ 61 ("the written reprimand that plaintiff received from Mr. Deegan *was in retaliation for plaintiff filing a complaint with the EEOC.*") (emphasis added); Am. Compl. ¶ 67 ("Cheshire Police Department's offensive and indignant behavior towards plaintiff *was in retaliation for plaintiff filing a complaint with the CHRO.*") (emphasis added); Am.Compl. ¶ 68 ("Cheshire Police Department's offensive and indignant behavior towards plaintiff *was in retaliation for plaintiff filing a complaint with the EEOC*") (emphasis added).

 A continuing violation, however, "may not be based on the continuing effects of an earlier discrimination or on a completed act of discrimination." *Martinez,* 1998 WL 342043 at *2; *see also United Air Lines,* 431 U.S. at 558, 97 S.Ct. 1885; *Lightfoot,* 110 F.3d at 907–08; *Blesedell,* 708 F.Supp. at 1414; *Malarkey,* 559 F.Supp. at 120. Moreover, a continuing violation requires a greater repetition and duration of the violations than has been alleged here. *Martinez,* 1998 WL 342043 at *2, *citing Riedinger v. D'Amicantino,* 974 F.Supp. 322, 326 (S.D.N.Y. 1997) (finding that a "persistent pattern of harassing behavior" by employer sufficient); *Petrosky v. New York State Dep't of Motor Vehicles,* 971 F.Supp. 75, 78 (N.D.N.Y.1997) ("repeated and continuous" occurrences of sexual harassment sufficient to establish a continuing violation). Absent specific allegations of additional instances of sexual harassment—at least one of which occurred within the limitations period, the 1997 incidents alleged by plaintiff do not constitute a series of discriminatory acts.

As noted above, a continuing violation may also be established where the acts were part of a broader discriminatory system that the defendant maintained prior to and during the limitations period. *Martinez,* 1998 WL 342043 at *3, *citing Blesedell,* 708 F.Supp. at 1415; *Wingfield,* 678 F.Supp. at 979. This exception "applies to cases involving specific discriminatory policies or mechanisms such as discriminatory lists ... or employment tests ... [and] multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism, do not amount to a continuing violation." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993); *see also Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir.1996) (alleged violations were not connected to a policy or practice of the employer and did not qualify for a continuing violation exception); *Carrasco,* 858 F.Supp. at 31–32 (general allegations in complaint about the existence of a discriminatory pattern insufficient as opposed to specific policies or mechanisms). This can also be constructively found "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994).

 Here, Miner makes no allegations that the sexual harassment was a policy or practice of the Town. Accordingly, she cannot rely on that theory in support of her continuing violation claim. Rather, Miner relies on the theory that a continuing violation may be constructively found where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice. This theory, however, is not supported by the allegations set forth in her amended complaint.

As noted above, other than those acts described in August and September 1997, there are no specific allegations of sexual harassment set forth in the amended complaint. Moreover, Miner expressly alleges that "[a]s a result of plaintiff's complaints of sexual harassment, [the] Cheshire Police Department ... conducted an investigation," Am.Compl. ¶ 30, and, as a result of that investigation, "certain restrictions were placed upon Mr. Deegan," Am. Compl. ¶ 31, including Deegan's being placed on paid leave and Deegan's being instructed not to work the same shifts as Miner. Thus, it can hardly be said that the Town allowed related incidents of discrimination to go unremedied for so long as to amount to a discriminatory policy or practice.

Although Miner alleges that upon Deegan's return from his paid leave, the harassment continued and the Town did nothing further to stop it, the amended complaint is totally devoid of a specific allegation of sexual harassment occurring within the limitations period. Moreover, "a conclusory allegation of a continuing violation will not suffice." *Bampoe v. Coach Stores, Inc.*, 93 F.Supp.2d 360, 369 (S.D.N.Y.2000); *see also Ahmed v. Samson Management Corp.*, No. 95Civ.9530(MBM), 1996 WL 183011 at *5 (S.D.N.Y.1996); *Carrasco*, 858 F.Supp. at 31–32; *Alveari v. Am. Int'l Group, Inc.*, 590 F.Supp. 228, 231 (S.D.N.Y.1984). Viewing Miner's allegations most favorably to her, the last specific instance of *sexual harassment* that is identified in the amended complaint took place no later than September 1997. As noted above, the allegations subsequently set forth in the amended complaint all relate to, and are pled in terms of, retaliation. *See, e.g.*, Am.Compl. ¶ 34 ("*In retaliation for filing a complaint of sexual harassment,* Mr. Deegan began to spread false rumors about the plaintiff throughout the police force and throughout the Cheshire community.") (emphasis added); Am.Compl. ¶ 42 ("Defendant Cheshire Police Department and Mr. Deegan have contested plaintiff's Workers' Compensation Claim because plaintiff is a female *and because she filed a complaint of sexual harassment.*") (emphasis added); Am.Compl. ¶ 59 ("Mr. Deegan's demand that plaintiff work alone with him *was in retaliation for plaintiff filing a complaint with the CHRO.*") (emphasis added); Am.Compl. ¶ 60 ("the written reprimand that plaintiff received from Mr. Deegan *was in retaliation for plaintiff filing a complaint with the CHRO.*") (emphasis added); Am.Compl. ¶ 61 ("the written reprimand that plaintiff received from Mr. Deegan *was in retaliation for plaintiff filing a complaint with the EEOC.*") (emphasis added).

That Miner has alleged several specific acts of *retaliation* within the limitations period is unavailing with respect to her claims of *sexual harassment.* A plaintiff cannot resurrect claims of discrimination that are outside the limitations period through subsequent acts of retaliation within the limitations period. *See, e.g., Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 759 (2d Cir.1998) (affirming dismissal of harassment claim as untimely and vacating dismissal of retaliation claim; "[i]t sometimes happens—more frequently than might be imagined—that an employee whose primary claim of discrimination cannot survive pre-trial dispositive motions is able to take to trial the secondary claim that he or she was fired or adversely affected in retaliation for asserting the primary claim"). Although Miner's claims of sexual harassment and retaliation are intertwined, they are separate and independent causes of action. Indeed, where, as here, Miner has alleged retaliatory acts within the limitations period, Miner could proceed with a retaliation claim even if she is unable to allege or establish claims of sexual harassment within the limitations period. *See, e.g., Quinn*, 159 F.3d at 759; *see also Cooper v. Wyeth Ayerst Lederle*, 106 F.Supp.2d 479, 501 (S.D.N.Y.2000) (plaintiff cannot "bootstrap her claim for failure to file a sexual harassment grievance onto the second aspect of her DFR

claim—failure to pursue the grievance in a non-discriminatory manner—in order to avoid the statute of limitations. The Union's alleged failure to file a sexual harassment/retaliation grievance is a wholly separate act from any discriminatory failure to prosecute the grievance that was filed. Those two claims are theoretically, factually and logically distinct. The underlying incidents therefore do not constitute a continuing violation within the meaning of *Cornwell.*").

In sum, Miner fails to state claims for sexual harassment because those claims are time-barred on their face, and she has pled no facts that would trigger application of the continuing violation doctrine or any other equitable tolling principles. Simply put, the plaintiff has not specifically alleged any claims of sexual harassment within the limitations period. Miner's attempt to invoke the continuing violation doctrine fails because the only specific acts of sexual harassment that she has identified in her amended complaint—Deegan's conduct in August and September 1997—occurred well before the pertinent limitation period. Under the circumstances presented here, the court concludes that Miner has not sufficiently pled a continuing violation for her claims of sexual harassment. Accordingly, Count One must be dismissed. Similarly, Count Three—insofar as it asserts a violation of CFEPA for sexual harassment—must also be dismissed. These counts will be dismissed, however, without prejudice to the filing of an amended complaint that alleges, with the requisite clarity and specificity, a continuing course of sexual harassment. *See, e.g., Ahmed,* 1996 WL 183011 at *5; *Shelford,* 889 F.Supp. at 89; *Urashka,* 841 F.Supp. at 473.[2]

*Counts Four, Five & Six—Municipal Liability*

In counts four, five and six of her amended complaint, Miner alleges claims against both the Town and Deegan for intentional infliction of emotional distress; negligent infliction of emotional distress and intentional battery and assault. The Town has moved to dismiss these counts as against the Town on the grounds of common law and statutory immunity. The Town has also moved to dismiss the claim for intentional infliction of emotional distress for failure to allege conduct that is sufficiently extreme and outrageous. In addition, the Town has moved to dismiss the claim for negligent infliction of emotional distress for failure to allege unreasonable conduct during the termination process and for failure to allege sufficient facts that the Town's conduct was so egregious that it should have realized that it was creating a risk of causing emotional distress.

*Intentional Infliction of Emotional Distress*

In Count Four, Miner asserts a claim against both the Town and Deegan for intentional infliction of emotional distress. With respect to her allegations against the Town, Miner alleges that:

> The Cheshire Police Department's conduct, as alleged, including but not limited to refusing to take action to protect plaintiff and other women from sexual harassment; refusing to take action to protect plaintiff from Mr. Deegan's aggressive, offensive, and hostile conduct; reprimanding plaintiff for asserting her rights to be free from sexual harassment; forcing plaintiff to resign her position a second time in retaliation for said exercise of her rights, would be considered to be extreme and outrageous by any reasonable member of the community and would be likely to cause offense and injury to any reasonable woman.

2. "Of course, all allegations in any such amended complaint shall be 'well grounded in fact' and made only after 'a reasonable and competent inquiry.' " *Urashka,* 841 F.Supp. at 473 n. 5, *citing* Fed.R.Civ.P. 11; *Bolden v. Morgan Stanley & Co.,* 765 F.Supp. 830, 834 (S.D.N.Y.1991).

Am.Compl. at 13, ¶ 81.[3] Miner also alleges that "[t]he Cheshire Police Department is responsible for the conduct of Mr. Deegan to the extent that it knew of the risk that he would harass plaintiff but did not make reasonable efforts to prevent it." Am. Compl. at 13, ¶ 82. Miner alleges that: (1) the "[d]efendants intended to inflict emotional distress upon plaintiff and/or knew or should have known that emotional distress was a substantially likely result of its conduct," Am.Compl. at 13, ¶ 90; (2) the "[d]efendants' conduct, as alleged, has caused and continues to cause plaintiff to experience severe emotional distress," Am. Compl. at 13, ¶ 91; and (3) the "[d]efendants' conduct, as alleged, has caused her lost past and future earnings, loss of employment benefits, and expenses and costs to institute this action." Am.Compl. at 13, ¶ 92.

To the extent that Miner alleges that the Town is liable for any intentional infliction of emotional distress by Deegan, *see* Am.Compl. at 13, ¶ 82, such a claim is precluded by Conn.Gen.Stat. § 52-557n, which provides, that "a political subdivision of the state shall not be liable for damages to person or property caused by ... [a]cts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or *willful* misconduct ..." Conn.Gen.Stat. § 52-557n(a)(2)(A) (emphasis added). Under Connecticut law, the term "willfulness" is synonymous with "intentional." *Bhinder v. Sun Co.,* 246 Conn. 223, 242 n. 14, 717 A.2d 202 (1998) ("While [courts] have attempted to draw definitional [distinctions] between the terms willful, wanton or reckless, in practice the three terms have been treated as meaning the same thing."), *quoting Dubay v. Irish,* 207 Conn. 518, 533, 542 A.2d 711 (1988); *see also Elliott v. City of Waterbury,* 245 Conn. 385, 415, 715 A.2d 27 (1998) (legal concepts of wanton, reckless, willful, intentional and malicious conduct indistinguishable); *Bauer v. Waste Management of Connecticut, Inc.,* 239 Conn. 515, 527, 686 A.2d 481 (1996) ("A willful act is one done intentionally or with reckless disregard of the consequences of one's conduct."). Thus, the Town may not be liable under section 52-557n(a)(2)(A) for Deegan's alleged intentional infliction of emotional distress.

Similarly, Miner's claim for intentional infliction of emotional distress directly against the Town is insufficient because the Town's conduct was not extreme or outrageous as a matter of law.

In order to assert a claim for intentional infliction of emotional distress, the plaintiff must establish four elements: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe." *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986); *see also Cavuoto v. Oxford Health Plans, Inc.,* No. 3:99-CV-00446 (EBB), 2000 WL 888263 at *8 (D.Conn. June 22, 2000).

Whether the Town's conduct is sufficient to satisfy the element of extreme and outrageous conduct is a question, in the first instance, for the court. *Johnson v. Chesebrough-Pond's USA Co.,* 918 F.Supp. 543, 552 (D.Conn.), *aff'd,* 104 F.3d. 355 (2d Cir.1996). Liability for intentional infliction of emotional distress requires conduct that is so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind. *See Taylor v. Maxxim Medical, Inc.,* 2000 WL 630918 at *3

3. In her amended complaint, Miner has begun the paragraph numbering of each count with paragraph 1. Accordingly, in this decision, references to the amended complaint recite both the page and paragraph number.

(D.Conn.2000); *Rapkin v. Rocque,* 97 F.Supp.2d 244 (D.Conn.2000), *citing Petyan,* 200 Conn. at 254 n. 5, 510 A.2d 1337 and *DeLaurentis v. New Haven,* 220 Conn. 225, 266–67, 597 A.2d 807 (1991); *Johnson,* 918 F.Supp. at 552 (general rule "is that there is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind"), *quoting Mellaly v. Eastman Kodak Co.,* 42 Conn. Supp. 17, 19–20, 597 A.2d 846 (Conn.Super.Ct.1991); *see also Cavuoto,* 2000 WL 888263 at *8; 1 Restatement (Second) at comment (d) ("[C]onduct must be so outrageous and extreme ... as to go beyond all possible grounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."). Thus, "[i]t is the intent to cause injury that is the gravamen of the tort." *DeLaurentis,* 220 Conn. at 266–67, 597 A.2d 807, *citing Hustler Magazine v. Falwell,* 485 U.S. 46, 53, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988).

Applying these stringent standards to the present case and viewing the allegations in the light most favorable to the plaintiff, the court holds that the Town's conduct as alleged in the amended complaint was not "so outrageous and extreme ... [as] to be regarded as atrocious and utterly intolerable in a civilized society."

In the employment context, it is the employer's conduct, not the motive behind the conduct, that must be extreme or outrageous. *See, e.g., Huff v. West Haven Board of Education,* 10 F.Supp.2d 117, 123 (D.Conn.1998). An employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner. *See, e.g., Hill v. Pinkerton Security & Investigation Services, Inc.,* 977 F.Supp. 148, 160 (D.Conn.1997) (included paying an African–American female less money than her counterparts and disciplining, reprimanding, and transferring plaintiff to two other locations in response to her wage investigation); *White v. Martin,* 23 F.Supp.2d 203, 208 (D.Conn.1998), *aff'd,* 198 F.3d 235 (2d Cir.1999) (employer's alleged discrimination, denial of a promotion, discipline, and harassment based on plaintiff's gender not extreme or outrageous).

In addition to routine employment actions, Connecticut courts hold that insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress. *Taylor,* 2000 WL 630918 at *3 (*citing Kintner v. Nidec–Torin Corp.,* 662 F.Supp. 112, 114 (D.Conn.1987); *Reed,* 652 F.Supp. at 137); *Ferraro v. Stop & Shop Supremarket Co.,* 2000 WL 768525 at *4 (Conn.Super.2000) (internal citations omitted).

Miner's claims against the Town for intentional infliction of emotional distress are that it: (1) "refus[ed] to take action to protect plaintiff and other women from sexual harassment;" (2) "refus[ed] to take action to protect plaintiff from Mr. Deegan's aggressive, offensive, and hostile conduct;" and (3) "reprimand[ed] plaintiff for asserting her rights to be free from sexual harassment, forcing plaintiff to resign her position a second time in retaliation for said exercise of her rights...." Am.Compl. at 13, ¶ 81. As a matter of law, this is not sufficiently extreme or outrageous to support a claim of intentional infliction of emotional distress. In the absence of allegations of facts indicating that the Town conducted such activities in a humiliating, extreme, or outrageous manner, the complaint does not state a claim for intentional infliction of emotional distress. Accordingly, Count Four as alleged against the Town must be dismissed.

*Negligent Infliction of Emotional Distress*

In Count Five, Miner alleges a claim against both the Town and Deegan for

negligent infliction of emotional distress. With respect to the allegations against the Town, Miner alleges that "[t]he Cheshire Police Department is responsible for its own conduct, and the conduct of Mr. Deegan, to the extent that it knew of the risk that he would continue to harass and retaliate against the plaintiff, but did not make reasonable efforts to prevent it." Am. Compl. at 14, ¶ 80. Miner claims that "[d]efendants knew or should have known that its conduct, as described above, was substantially likely to cause plaintiff emotional distress, which was further likely to result in physiological injury and lost past and future earnings and costs for instituting this action." Am.Compl. at 14, ¶ 81. Miner claims that she has sustained such damages. Am.Compl. at 14, ¶ 82. Miner further alleges that the "Cheshire Police Department is responsible for the conduct of its employees including Mr. Deegan in respondeat superior." Am.Compl. at 14, ¶ 83.

Plaintiff's theory of respondeat superior liability must be dismissed because "[a] municipality enjoys governmental immunity for common-law negligence unless a statute has limited or abrogated that immunity." *Hughes v. City of Hartford,* 96 F.Supp.2d 114, 120 (D.Conn.2000), *citing Williams v. City of New Haven,* 243 Conn. 763, 766, 707 A.2d 1251 (1998).

Similarly, Conn.Gen.Stat. § 52–557n does not permit a claim against the Town for its own negligence—or that of its employees—because that statute only authorizes claims in negligence where the municipality has breached a ministerial, but not a discretionary, duty.[4] *Tice v. Southington Board of Education,* 94 F.Supp.2d 242, 245 (D.Conn.2000). Under Connecticut law, a municipality is immune from liability for the "negligent acts or omissions which require the exercise of judgment or discretion...." Conn.Gen.Stat. § 52–557n(a)(2)(B). A municipality is "not immune, however, from liability for ministerial acts performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action.... Thus, liability may attach for a negligently performed ministerial act, but not for a negligently performed ... discretionary act." *Romano v. Derby,* 42 Conn. App. 624, 629, 681 A.2d 387 (1996) (citations and internal quotation marks omitted). Accordingly, the Town's liability here hinges upon whether the alleged conduct was discretionary or ministerial.

Ordinarily, "whether the act complained of ... is discretionary or ministerial is a factual question which depends upon the nature of the act complained of." *Id.* However, "extensive and near-unanimous precedent in Connecticut clearly demonstrates that the acts or omissions alleged in the plaintiff's complaint [against the Town]—the failure to ... supervise, control and discipline—are discretionary acts as a matter of law." *Hughes,* 96 F.Supp.2d at 119 (collecting cases). Accordingly, the acts alleged in the Miner's amended complaint on the part of the Town of Cheshire are discretionary in nature, and are therefore protected by governmental immunity. Thus, the count five must be dismissed as against the Town. *See Hughes,* 96 F.Supp.2d at 120.

In addition, Miner's claim for negligent infliction of emotional distress against the Town is also insufficient as a matter of

4. Section 52–557n(a) provides, in pertinent part:

(1) Except as otherwise provided by law a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties....

(2) "Except as otherwise provided by law, a political subdivision of the state *shall not* be liable for damages to person or property caused by: ... (B) negligent acts or omissions *which require the exercise of judgment or discretion* as an official function of the authority expressly or impliedly granted by law."

Conn.Gen.Stat. § 52–557n(a) (emphasis added).

law. A claim of negligent infliction of emotional distress as an independent tort is relatively new to Connecticut law. Historically, emotional distress was not compensated at common law in the absence of physical injury or a risk of harm from physical impact. *Malik v. Carrier Corp.*, 986 F.Supp. 86, 89 (D.Conn.1997), *aff'd in part, rev'd in part*, 202 F.3d 97 (2d Cir. 2000). It was not until 1978 that the Connecticut Supreme Court recognized the tort of negligent infliction of emotional distress. *Montinieri v. Southern New England Telephone Co.*, 175 Conn. 337, 398 A.2d 1180 (1978). In *Montinieri*, and consistently ever since, the Connecticut Supreme Court has held that, in order to assert a cause of action for negligent infliction of emotional distress, a plaintiff has the burden of pleading that the "defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it was caused, might result in illness or bodily harm." *Id.* at 345, 398 A.2d 1180; *see also Parsons v. United Technologies Corp.*, 243 Conn. 66, 88, 700 A.2d 655 (1997); *Morris v. Hartford Courant Co.*, 200 Conn. 676, 683–84, 513 A.2d 66 (1986). In holding that recovery for negligent infliction of emotional distress does not require allegations of physical injury or the risk of harm from physical impact, the Court recognized that this tort must nevertheless "be limited so as not to 'open up a wide vista of litigation in the field of bad manners, where relatively minor annoyances had better be dealt with by instruments of social control other than the law.'" *Montinieri*, 175 Conn. at 345, 398 A.2d 1180, *quoting* Calvert Magruder, *Mental and Emotional Disturbance in the Law of Torts*, 49 Harv.L.Rev. 1033, 1035 (1939).

Because emotional distress in the workplace is not uncommon, courts have "viewed the application of the [negligent infliction of emotional distress] doctrine to employment relationships with some alarm." *Hernandez v. City of Hartford*, 30 F.Supp.2d 268, 273 (D.Conn.1998), *quoting Malik*, 986 F.Supp. at 91. Moreover, the Connecticut Supreme court has stated that, in the employment context, "courts should not lightly intervene to impair the exercise of management discretion or to foment unwarranted litigation." *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 477, 427 A.2d 385 (1980). Therefore, courts have been concerned about the expansion of this claim in the employment context and have kept a "tight rein" on these claims. *Hernandez*, 30 F.Supp.2d at 273.

To that end, Connecticut courts have held that "even an employer's wrongful employment actions are not enough to sustain a claim for negligent infliction of emotional distress." *Id., citing Hill v. Pinkerton Security & Investigation Services, Inc.*, 977 F.Supp. 148, 159 (D.Conn. 1997). To state a claim for negligent infliction of emotional distress, the complaint must include allegations of unreasonable conduct in the manner in which the employer carried out an employment action. *See id.; Parsons*, 243 Conn. at 89, 700 A.2d 655; *Lopez–Salerno v. Hartford Fire Insurance Co.*, 1997 WL 766890 at *6 (D.Conn. Dec. 8, 1997); *Hultgren v. First Fidelity Bank*, 1997 WL 766879 at *8 (D.Conn. Dec. 2, 1997).

Moreover, to be unreasonable, the employer's conduct must be humiliating, extreme, or outrageous. *See Johnson v. Chesebrough–Ponds, Inc.*, 1996 WL 734043 at *3 (2d Cir.1996); *Parsons*, 243 Conn. at 88, 700 A.2d 655 (affirming the trial court's striking of an negligent infliction claim, where the trial court defined unreasonable conduct as humiliating and rejected the suggestion from another court that conduct that is embarrassing or inconsiderate is actionable); *Brown v. Nationscredit Commercial Corp.*, 2000 WL 306947 at *4 (D.Conn. Feb. 8, 2000) ("Connecticut courts have uniformly held extreme and outrageous behavior" is required); *Roberts v. Andersen Laboratories, Inc.*, 1997 WL 663303 at *9 (Conn.Super. Oct.14, 1997)

("An essential element of the tort is conduct that is extreme and outrageous.").

Therefore, ordinary employment actions, even if wrongful, do not support a claim for negligent infliction of emotional distress absent an employer's egregious conduct in carrying out those actions. Courts have consistently held that termination for discriminatory reasons, without more, is not enough to sustain a claim for negligent infliction of emotional distress. *See, e.g., Newtown v. Shell Oil Co.*, 52 F.Supp.2d 366, 367, 375 (D.Conn.1999); *Thomas v. St. Francis Hospital and Medical Center*, 990 F.Supp. 81, 92 (D.Conn. 1998). Courts have also found that the following employment actions, short of termination are not humiliating, extreme or outrageous as a matter of law: the wrongful refusal to hire based on racial discrimination, *Huff v. West Haven Board of Education*, 10 F.Supp.2d 117, 124 (D.Conn. 1998) (motion to dismiss granted); the failure to place an employee on an eligibility list for promotions, thereby denying her a promotion, and the failure to notify the plaintiff of her rights in the appeal process, *Stosuy v. City of Stamford*, 1999 WL 711515 at *4 (Conn.Super. Aug. 30, 1999) (motion to strike granted); the denial of a pregnant employee's request to work at home upon medical advice due to premature labor, *Hernandez*, 30 F.Supp.2d at 273–74 (judgment as a matter of law granted); and the promise of a promotion that never occurred, *Perillo v. Perkin–Elmer Corp.*, 1998 WL 846737 at *3 (D.Conn. Dec. 3, 1998) (summary judgment granted).

In *Hill v. Pinkerton Security & Investigation Services, Inc.*, 977 F.Supp. 148, 159 (D.Conn.1997), the court held that an employer's alleged unsatisfactory response to an African–American, female security guard employee's complaint of a wage differential was not unreasonable as a matter of law. The plaintiff alleged that this response included revoking the plaintiff's fifteen-minute grace period for signing in, questioning the length of time it took her to complete her duties, restricting her access to her supervisor's office, changing her work post, temporarily transferring her to another work site and then permanently transferring her to yet another different location where the plaintiff continued to work at the same rate of pay. *Id.* at 151–53. Even though the employee was not satisfied with the way in which her employer investigated her compensation complaint, the court held that "such routine employment occurrences as the plaintiff experienced were not so unreasonable that the defendant knew or should have known that its conduct involved an unreasonable risk of causing emotional distress which might result in illness or bodily harm." *Id.* at 159.

Based on the allegations of the complaint, construed in the light most favorable to Miner, the Town's conduct was not so unreasonable that the Town should have known that it involved an unreasonable risk of causing emotional distress that might result in illness or bodily harm to Miner. First, Miner bases her claim of negligent infliction of emotional distress against the Town on the same facts underlying her claims of discriminatory conduct. *See* Am.Compl. ¶¶ 1–79. Miner claims against the Town are that, after (1) conducting an investigation of Miner's complaints of sexual harassment, (2) placing Deegan on paid leave, and (3) placing certain restrictions on Deegan upon his return, the Town did nothing further to stop the alleged harassment. Miner further alleges that the Town questioned the severity and origin of her Workers' Compensation claim and thereafter contested that claim, treating her differently from male individuals. Miner also alleges that, following the March 29, 1999 incident, the Town accused her of insubordination and neglect of duty; notified her that there were no work restrictions placed on Deegan; and threatened her job based solely on Deegan's March 29th warning. Miner alleges that the Town's conduct was in retaliation for her filing a complaint with

the CHRO and EEOC. Miner also alleges that the Town was well aware of Deegan's harassment, but failed to take adequate remedial measures or provide adequate training; and failed to provide an appropriate mechanism for the reporting of incidents of sexual harassment in the workplace.

Simply put, this is not enough to support a claim of negligent infliction of emotional distress. In the absence of allegations of facts indicating that the Town conducted routine employment activities in a humiliating, extreme, or outrageous manner, the complaint does not state a claim for negligent infliction of emotional distress. Miner's claims that the Town did not take appropriate steps to address the alleged harassment; contested her Workers' Compensation claim; and did not appropriately respond to her complaints are not extreme or outrageous as a matter of law. *See Hill,* 977 F.Supp. at 159. Nor are Miner's additional allegations, that the Town threatened her job based solely on Deegan's warning, legally sufficient. Miner has alleged no supporting facts that the Town acted in a humiliating, extreme, or outrageous manner. In short, Miner's allegations do not rise to the required level of unreasonableness to state a claim for negligent infliction of emotional distress. *See Thomas,* 990 F.Supp. at 92; *Perillo,* 1998 WL 846737 at *3.

For the foregoing reasons, Miner's claim of negligent infliction against the Town fails. The motion to dismiss is granted in favor of the Town on Count Five.

*Assault and Battery*

In Count Six, Miner alleges that Deegan's conduct constituted the intentional torts of battery and assault. Am.Compl. at 14–15, ¶¶ 80–81. Miner alleges that the "Cheshire Police Department is responsible for Deegan's conduct to the extent that it knew of the risk that he would harass plaintiff but did not make reasonable efforts to prevent it." Am.Compl. at 15, ¶ 83. Miner alleges that the "Cheshire Police Department is responsible for the intentional tortious conduct of Mr. Deegan in respondeat superior." Am.Compl. at 15, ¶ 84.

As noted above, section 52–557n(a)(2)(A) provides in relevant part that "a political subdivision of the state shall not be liable for damages to person or property caused by ... [a]cts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or willful misconduct ..." Conn.Gen.Stat. § 52–557n(a)(2)(A).

Count Six expressly alleges a cause of action predicated upon alleged *intentional* acts by Deegan. The motion to dismiss the claims of assault and battery as against the Town is granted on the ground that section 52–557n(a)(2)(A) specifically exempts the Town from liability for such willful, intentional misconduct of its employees as is alleged in Count Six.

*Counts Three, Seven and Eight—Supplemental Jurisdiction*

The Town urges the court to decline supplemental jurisdiction over any remaining state law claims pursuant to 28 U.S.C. § 1367. Because the court has subject matter jurisdiction over the plaintiff's Title VII claims, and because the surviving state law claims arise from the same nucleus of operative facts, the court, in its discretion, will retain jurisdiction over the remaining state law claims in the interests of judicial economy.[5]

*Deegan's Motion to Dismiss*

Deegan has moved to dismiss Counts One, Two and Three of the plaintiff's initial complaint. These counts are, respectively:

5. The Town asked "that Count Eight be dismissed because Miner has failed to use any procedures in her collective bargaining agreement to remedy this situation." Memorandum of Law in Support of Defendants' [sic] Motion to Dismiss at 2. Other than this statement, this issue was not raised by the Town, nor was it briefed by the parties. Accordingly, the Town's request to dismiss Count Eight on this ground is denied without prejudice.

sexual harassment in violation of Title VII, retaliation in violation of Title VII and sexual harassment and retaliation in violation of CFEPA, respectively. Because they set forth the same causes of action, the court treats Deegan's Motion to Dismiss as directed at Counts One, Two and Three of the plaintiff's amended complaint.

*Counts One and Two—Individual Liability Under Title VII*

Deegan moves to dismiss Counts One and Two, alleging sexual harassment and retaliation under Title VII, on the grounds that Title VII does not provide a right of action against Deegan personally, citing *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995). Although Miner concedes that *Tomka* "is the most current Second Circuit decision on individual liability under Title VII and is therefore precedent for this Court to follow," Pl.'s Memorandum in Opposition to Defendant Deegan's Motion to Dismiss at 9, she argues that the Circuit Courts of Appeals are divided on the issue and that the Supreme Court has not yet resolved the question. *Id.* Miner further argues that *Tomka* is distinguishable because "the individual defendants in *Tomka* were characterized as 'co-employees' and none was the direct supervisor of plaintiff with respect to conditions of her employment." *Id.* Here, she claims, Deegan had supervisory control over her.

The court is not persuaded that individual liability under Title VII may extend to Deegan. In *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995), *abrogated on other grounds, Burlington Ind. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), the Second Circuit held that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." The Court noted that Title VII specifically limited liability to employer-entities with 15 or more employees. *Id.* at 1314, *citing* 42 U.S.C. § 2000e(b). In light of Congress' concern to avoid subjecting small employers to the burdens of Title VII, the Court reasoned that it was inconceivable that Congress would simultaneously allow civil liability to run against individual employees. *Id.; see also McBride v. Routh,* 51 F.Supp.2d 153, 156 (D.Conn.1999), *citing Northup v. Connecticut Commission on Human Rights & Opportunities,* No. 3:97CV211(DJS), 1998 WL 118145 at *3 (D.Conn. Feb. 2, 1998); *Friel v. St. Francis Hospital,* No. 3:97CV803(DJS), 1997 WL 694729 at *3 (D.Conn. Oct. 31, 1997); *Schaffer v. Ames Department Stores, Inc.,* 889 F.Supp. 41, 44 (D.Conn.1995). The *Tomka* Court dismissed the plaintiff's Title VII claims against her three supervisors, whom she had sued in their corporate as well as their individual capacities.

What the Second Circuit has not yet addressed is the specific issue whether a plaintiff may assert a Title VII claim against an individual supervisor in his or her official capacity.[6] Courts in this District, however, have rejected such claims. *See, e.g., McBride,* 51 F.Supp.2d at 156–57; *Schaffer,* 889 F.Supp. at 43–46. "Other district courts within this Circuit have reached conflicting results, although the recent trend in Title VII cases has been to disallow official capacity claims against non-employer individuals." *McBride,* 51 F.Supp.2d at 156–57 (collecting cases). The court is persuaded by the cases disallowing such official capacity claims. *Tomka* and the language of Title VII compel a holding that only employer-entities have liability under Title VII. Thus, Miner may not assert a Title VII claim against Deegan in her individual or official capacity. Miner's claim for Title VII discrimination is against her employer, not against an individual supervisor. Accordingly, Counts One and Two alleging sexual harassment and retaliation against Deegan must be dismissed.

6. Miner has not made any distinction between official and individual capacity in her amended complaint.

*Count Three—Individual Liability Under CFEPA*

Deegan similarly seeks to dismiss Count Three against him personally on the ground that there is no individual supervisory liability under CFEPA.

The Connecticut appellate courts have yet to rule on the question whether supervisory employees can be held individually liable under CFEPA. There is also disagreement among the lower Connecticut courts that have considered the issue. *See Wasik v. Stevens Lincoln–Mercury, Inc.,* No. Civ. 3:98cv1083(DJS), 2000 WL 306048 (D.Conn. Mar. 20, 2000), *comparing Le v. Connecticut Dept. of Transportation,* No. CV980491121S, 1999 WL 619631, at *3 (Conn.Super.Ct. Aug. 4, 1999) (holding that supervisory employee is not an employer under the terms of CFEPA, and because the employer is liable for the employee's actions, a plaintiff may not maintain an action against the employee individually under Conn.Gen.Stat. § 46a–60); *Nwachukwu v. State of Connecticut Department of Labor,* No. CV–970573595S, 1997 WL 803857, at *2 (Conn.Super.Ct. Dec. 17, 1997) (finding that the plain language of section 46a–60(a)(1) indicates that employers are responsible for the actions of their employees, and that there is no language in the section making employees liable individually); *Martinez–Duffy v. DeJesus,* No. 545193, 17 Conn.L.Rptr. 64, 65–66 (Conn.Super.Ct. May 1, 1996) (finding supervisor not subject to individual liability under Conn.Gen.Stat. § 46a–60 because supervisors are not employers and are not the intended defendants within the meaning of CFEPA); and *Walters v. Homestaff Health Care,* No. CV 950146961S, 1996 WL 88058 at *4 (Conn.Super.Ct. Feb. 8, 1996) (finding supervisory employee not liable under the plain meaning of section 46a–60a(8) because he was not an employer), *with Dombrowski v. Envirotest System,* No. CV 980412518, 1999 WL 643394, at *2 (Conn.Super.Ct. Aug. 10, 1999) ("The specific language of § 46a–60(a)(4) prohibiting any 'person' from discharging, expelling or otherwise discriminating against any person because he has opposed any discriminatory employment practice, leads to the conclusion that a cause of action against an individual is permitted under this section."), and *Lueneburg v. Mystic Dental Group,* No. CV 535839, 1996 WL 456967, at *4–5 (Conn.Super.Ct. Aug. 1, 1996) (construing the remedial provision of CFEPA to allow supervisory employees to be held individually liable); *see also Kavy v. New Britain Bd. of Ed.,* No. CV990492921S, 1999 WL 619587, at *5–6 (Conn.Super.Ct. Aug.3, 1999) (finding supervisory employees are not employers within the meaning of CFEPA, and therefore not liable under sections 46a–60(a)(8) and 46a–81c, but they are persons within the meaning of the Act, and may therefore be liable under sections 46a–60(a)(4), and (5)); *Sefsik v. Fiandra,* No. 326723, 1998 WL 481880, at *1–2 (Conn.Super.Ct. Aug. 5, 1998) (finding there is no individual supervisory liability under Conn.Gen.Stat. section 46a–60(a)(1) because individual defendants are not employers under CFEPA, but they may be liable under section 46a–60(a)(4) because this section specifically includes the term "persons" as potentially liable parties).

In *Wasik v. Stevens Lincoln–Mercury, Inc.,* No. Civ. 3:98cv1083(DJS), 2000 WL 306048 (D.Conn. Mar. 20, 2000), an age discrimination case, the court, in the absence of controlling precedent, determined how the Connecticut Supreme Court would decide the issue. *Id.* at *6, *citing Continental Cas. Co. v. Pullman, Comley, Bradley & Reeves,* 929 F.2d 103, 105 (2d Cir. 1991). The court noted that, "[g]enerally, Connecticut courts look to case law involving federal legislation to interpret their state's anti-discrimination statute." *Wasik,* 2000 WL 306048 at *6, *citing Bridgeport Hosp. v. Commission on Human Rights and Opportunities,* 232 Conn. 91, 108, 653 A.2d 782 (1995). The court also noted, however, that "the Connecticut Supreme Court has also stated that 'under certain circumstances, federal law defines

the beginning and not the end of our approach to the subject.'" *Wasik,* 2000 WL 306048 at *6, *citing State v. Commission on Human Rights and Opportunities,* 211 Conn. 464, 469–70, 559 A.2d 1120 (1989).

The court reasoned that, in contrast to the federal Age Discrimination in Employment Act ("ADEA"), the definition of "employer" under CFEPA reaches "the state and all political subdivisions thereof and any person or employer with three or more persons in his employ." Conn.Gen. Stat. § 46a–51(10). The court noted that "[a]t least one court has found significant the fact that an employer need only employ three employees to fit within CFEPA's definition of an employer, and has interpreted this difference as an indication that the Connecticut legislature intended to provide for supervisory liability." *Wasik,* 2000 WL 306048 at *6, *citing Lueneburg,* 1996 WL 456967, at *3 ("The statutory definitions and remedies provided for under the CFEPA are significantly different from the ADEA and Title VII and these differences are intended to express a legislative intent to allow supervisory employees to be held individually liable for discrimination."). The court stated, however, that although "CFEPA's definition of an employer is significantly more inclusive than the ADEA definition, it should not be concluded based on this factor alone that the Connecticut legislature intended this difference to signify the inclusion of individual supervisors for purposes of liability. Instead, this ambiguity should be clarified by examining the remaining provisions of CFEPA and, thus, viewing the Statute as a whole." *Wasik,* 2000 WL 306048 at *6.

Reviewing the remaining provisions of CFEPA, the *Wasik* court found that, although Conn.Gen.Stat. § 46a–60(a)(1) makes it unlawful for "an employer, by himself or his agent," to discharge or discriminate against an individual in compensation or in the terms, conditions, or privileges of employment on the basis of age, "other CFEPA provisions expressly extend liability for discriminatory acts to individual persons, regardless of whether they are employers." *Wasik,* 2000 WL 306048 at *6, *citing* Conn.Gen.Stat. § 46a–60(a)(4) (it shall be a discriminatory employment practice under CFEPA "[f]or any *person,* employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any discriminatory employment practice"); Conn.Gen. Stat. § 46a–60(a)(5) (it shall be a discriminatory practice "[f]or any *person, whether an employer or an employee or not,* to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so"); Conn.Gen.Stat. § 46a–60(a)(6) (it shall be a discriminatory practice "[f]or any *person,* employer, employment agency or labor organization ... to advertise employment opportunities in such a manner as to restrict such employment so as to discriminate against individuals") (emphasis added). The court found that "[t]his distinction in the choice of language is significant. It is a basic rule of statutory construction that when the legislature had an opportunity to include a class of entities in its prohibition against certain acts, but did not do so, the legislature intended, by omission, not to include such class." *Id.*

Applying this rule to the question before the court, and viewing the statute as a whole, the *Wasik* court concluded that "the legislature, by failing to extend liability expressly to 'persons' in § 46a–60(a)(1), and instead limiting liability in that section to employers, by themselves or through their agents, did not intend to hold employees, whether supervisory or not, individually liable under § 46a–60(a)(1)." *Id.* at *7. The court therefore held that the defendant could not be held individually liable under the plaintiff's CFEPA claim pursuant to section 46a–60(a)(1).[7] *Id.; see*

7. The court noted that "a supervisory employee does not meet the definition of employer because, by definition, he does not employ three or more employees." *Wasik,* 2000 WL

also Cox v. Namnoun, No. 3:95CV37 (AVC), slip op. at 12 (D.Conn. Sept. 26, 1996) (noting that the Connecticut legislature extended liability to "any person" in other sections of CFEPA, but only to an "employer" in section 46a–60(a)(1), and concluding that section 46a–60(a)(1) does not provide for individual supervisory liability). *But see Swanson v. Envirotest Sys. Inc.*, No. 3:98CV751(AHN), 1998 WL 928415, at *3 (D.Conn. Dec. 18, 1998); *Armstrong v. Chrysler Fin. Corp.*, No. 3:97CV1557(AHN), 1998 WL 342045 at *4 (D.Conn. May 14, 1998); *Murphy v. Burgess and Norwalk Economic Opportunity, Inc.*, No. 3:96CV1987(AHN), 1997 WL 529610 at *3–5 (D.Conn. July 16, 1997) (holding in Murphy, and declining to reconsider in Swanson and Armstrong that, in light of the differences between the statutory scheme and remedial provisions of CFEPA and Title VII, CFEPA's discrimination provisions were intended to impose individual liability on supervisors who hold positions of power, control, and authority, and who use that power, control, and authority to engage in the conduct giving rise to a discrimination claim); *Thompson v. Service Merchandise, Inc.*, No. 3:96CV1602(GLG), 1998 WL 559735, at *4 (D.Conn. Aug. 11, 1998) (sua sponte granting summary judgment with respect to Title VII claims against individual supervisors, but preserving claims against supervisors under CFEPA based on holding in *Murphy*, supra, that supervisors may be held individually liable under CFEPA).

After careful analysis, this court finds the reasoning of *Wasik* to be persuasive and applicable with equal force to Miner's claims of sexual harassment and retaliation under CFEPA. In Count Three, Miner alleges violations of sections 46a–60(1), (4), (5) and (8). Section 46a–60(1) however, makes it unlawful for "an employer, by himself or his agent," to discharge or discriminate against an individual in compensation or in the terms, conditions, or privileges of employment on the basis of age. Similarly, section 46a–60(8) makes it unlawful for "an employer, by himself or his agent, for an employment agency, by itself or its agent, or for any labor organization, by itself or its agent to harass any employee, person seeking employment or member on the basis of sex." Conn.Gen.Stat. § 46a–60(8). The legislature, by failing to extend liability expressly to "persons" in sections 46a–60(a)(1) and (8) and instead limiting liability in that section, did not intend to hold employees, whether supervisory or not, individually liable. Moreover, the fact that the Connecticut legislature extended liability to "any person" in other sections of CFEPA, but did not do so in sections 46a–60(a)(1) and (8) is significant. Accordingly, section 46a–60(a)(1) and (8) do not provide for individual supervisory liability.

Although there is no individual supervisory liability under sections 46a–60(a)(1) and (8), recovery against a supervisory employee may be cognizable under the retaliation provision contained in section 46a–60(a)(4) and under the aiding and abetting provision contained in section 46a–60(a)(5). *See Wasik*, 2000 WL 306048 at *7; *see also Cullen v. Putnam Savings Bank, Inc.*, No. 3:96cv2315 (AHN), 1997 WL 280502 at *5 (D.Conn. May 17, 1997) (finding supervisor may be individually liable for aiding and abetting discrimination under section 46a–60(a)(5)). Section 46a–60(a)(4) makes it unlawful for "any *person*, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any discriminatory employment practice or because he has filed a complaint or testified or assisted in any proceeding ..." in connection therewith. Conn.Gen.Stat. § 46a–60(a)(4) (emphasis added); *see also Wasik*, 2000 WL 306048 at *7 n. 6 (In addition to section 46a–60(a)(5), "[r]ecovery against individual persons may also be authorized under

306048 at *7, *citing* Conn.Gen.Stat. § 46a–51(10).

Conn.Gen.Stat. §§ 46a–60(a)(4) and (6). However these subsections of CFEPA, addressing retaliation and job advertisement, are entirely unrelated to the case at bar."). Similarly, under section 46a–60(a)(5) it is a violation of CFEPA "[f]or any *person, whether an employer or an employee or not,* to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so." Conn.Gen.Stat. § 46a–60(a)(5) (emphasis added). Accordingly, recovery against a supervisory employee is cognizable under this aiding and abetting provision of CFEPA. *Wasik,* 2000 WL 306048 at *7. Viewing the allegations of Miner's amended complaint in the light most favorable to her, the court cannot conclude at present that the plaintiff can prove no set of facts in support of her section 46a–60(a)(4) and (5) claims which would entitle her to relief. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994). Dismissal at this stage, therefore, is inappropriate with respect to those claims.

Because section 46a–60(a)(1) and (8) do not provide for individual supervisory liability, Miner has not alleged a viable claim under CFEPA against Deegan individually, and these claims in Count Three are dismissed. Deegan's motion to dismiss with respect to Miner's CFEPA claims under sections 46a–60(a)(4) and (5), however, is denied.[8]

***CONCLUSION***

For the foregoing reasons, the Town's Motion to Dismiss (**doc.# 12**) is GRANTED IN PART and DENIED IN PART. Deegan's Motion to Dismiss (**doc.# 14**) is GRANTED IN PART and DENIED IN PART.

The following causes of action are dismissed: (1) Count One, alleging claims under Title VII for sexual harassment against the Town. This claim against the Town is dismissed, however, without prejudice to the filing of an amended complaint that alleges, with the requisite clarity and specificity, a continuing violation for the sexual harassment claims; (2) Count One, alleging claims under Title VII for sexual harassment against Deegan; (3) Count Two alleging claims under Title VII for unlawful retaliation is dismissed as against Deegan only; (4) Count Three, insofar as it alleges claims against the Town for sexual harassment under CFEPA. This claim against the Town is dismissed, however, without prejudice to the filing of an amended complaint that alleges, with the requisite clarity and specificity, a continuing violation for the sexual harassment claims; (5) Count Three, alleging claims under sections 46a–60(a)(1) and (8) of CFEPA are dismissed as against Deegan; (6) Count Four, alleging intentional infliction of emotional distress against the Town; (7) Count Five, alleging negligent infliction of emotional distress against the Town; and (8) Count Six, alleging battery and assault against the Town.

The following claims survive the motion to dismiss: (1) Count Two, alleging claims under Title VII for unlawful retaliation against the Town; (2) Count Three, alleging claims other than sexual harassment against the Town under CFEPA; (3) Count Three alleging claims under sections 46a–60(a)(4) and (5) of CFEPA against Deegan; (4) Count Four, alleging intentional infliction of emotional distress against Deegan; (5) Count Five, alleging negligent infliction of emotional distress against Deegan; (6) Count Six, alleging battery and assault against Deegan; (7) Count Seven alleging negligent supervision against the Town; (8) Count Eight alleging a breach of the implied covenant of good faith and fair dealing against the Town; and (9) Count Nine alleging defamation against Deegan.

8. The court declines to consider Deegan's additional argument that CFEPA is unconstitutional on its face at this juncture. Accordingly, Deegan's Motion to Dismiss on this ground is denied without prejudice to raising this claim in a future dispositive motion.

The plaintiff shall file a second amended complaint consistent with this ruling by **October 31, 2000.**[9]

It is so ordered.

9. The plaintiff's complaint shall only be amended to eliminate the claims dismissed by this ruling and to assert, with the requisite clarity and specificity, a continuing violation for the sexual harassment claims. Any other substantive request to amend the plaintiff's complaint must be made by formal motion seeking leave to amend.